UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-----------------------------------------------------------x

HASSAN CHUNN; NEHEMIAH McBRIDE;
AYMAN RABADI by his Next Friend Migdaliz
Quinones; and JUSTIN RODRIGUEZ by his Next
Friend Jacklyn Romanoff, individually and on
behalf of all others similarly situated,

     Civil Action No.
     20-CV-1590 (Kovner, J.)

               Petitioners,

       -against-

WARDEN DEREK EDGE,

               Respondent.

-----------------------------------------------------------x


**RESPONDENT'S SUPPLEMENTAL MEMORANDUM OF LAW IN OPPOSITION TO PETITIONERS' MOTION FOR A TEMPORARY RESTRAINING ORDER**


RICHARD P. DONOGHUE
United States Attorney
*Counsel for Respondent*
Eastern District of New York
271-A Cadman Plaza East, 7th Floor
Brooklyn, New York 11201

April 1, 2020


JAMES R. CHO
Assistant United States Attorney
(Of Counsel)

# PRELIMINARY STATEMENT

Pursuant to the Court's April 1, 202 Order, Respondent Derek Edge, Warden of the

Metropolitan Detention Center in Brooklyn, New York ("MDC"), respectfully submits this

Supplemental Memorandum of Law in Opposition to Petitioners' Motion for a Temporary

Restraining Order ("TRO").

The Court's April 1, 2020 states as follows:

ORDER: In preparation for the hearing on petitioners' request for a temporary restraining order, the parties should be prepared to discuss: (1) the extent to which petitioners and other inmates in the proposed class have alternative avenues for obtaining release, including compassionate release and bail, and whether the availability of alternative avenues bears on the TRO analysis; (2) why orders of release from custody, instead of orders directed at constitutionally deficient conditions, are the appropriate remedy for any such conditions; and (3) the relevance, if any, of additional BOP measures publicly reported this evening ("BOP COVID-19 Action Plan Phase Five"). If Respondent believes that the new BOP measures are relevant, the Court requests that Respondent submit a supplemental declaration that outlines the additional measures or incorporates a memorandum setting out those measures. Ordered by Judge Rachel P. Kovner on 4/1/2020. (Hershey, Kenneth).

Dkt. Entry dated April 1, 2020.

As discussed further below, (1) the existence of alternative remedies available to

Petitioners obviates the need for a TRO; (2) orders of release from custody are not the

appropriate remedy here; and (3) the BOP COVID-19 Action Plan Phase Five defeats

Petitioners' claim for a TRO.

## 1. Existence of Available Alternative Remedies Obviates The Need for A Temporary Restraining Order

The named Petitioners in this action are all sentenced inmates. As stated in

Respondent's Opposition ("Resp. Opp." or "Opposition"), Petitioners have alternative methods

for securing early release. *See, e.g.*, 18 U.S.C. § 3582 (compassionate release); 18 U.S.C. § 3624(c) (prerelease custody/home confinement). Resp. Mem. at 20.[1]

As noted in Respondent's Opposition filed yesterday, BOP has a policy regarding potential home confinement. At the request of the Federal Defenders of New York, this Office and BOP are reviewing the cases of 11 inmates who they believe are eligible for home confinement. This Office is conferring with BOP regarding these cases. BOP also continues to review each case and will make a final determination pursuant to its policies.

Sentenced inmates at MDC may elect to pursue compassionate under 18 U.S.C. § 3582. However, the application for such a release generally should be made in the court of the district of conviction. Importantly, with regard to the instant action, among the named petitioners, all but Petitioner Chunn were prosecuted and convicted in the Southern District of New York. Thus, Petitioners Rodriguez, McBride, and Ribadi should be seeking compassionate release in the Southern District of New York.

A number of defendants who have sought early release on these and other grounds out of fear of contracting COVID-19 while housed at the MDC. *See, e.g.*, *United States v. Hamilton*, No. 19-CR-54-01, 2020 WL 1323036, at *2 (E.D.N.Y. Mar. 20, 2020) (Garaufis, J.); *United States v. Redzepagic*, No. 17-cr-228 (DRH) (AKT), Dkt. No. 118 (E.D.N.Y. Mar. 30, 2020); *United States v. Cohen*, No. 17-CR-544 (E.D.N.Y. Mar. 25, 2020) (Garaufis, J.) (denying defendant Cohen's motion for compassionate release pursuant to 18 U.S.C. § 3582(c)(1)(A)(ii), where Cohen argued that the COVID-19 pandemic constituted "extraordinary and compelling reasons" for his relief and argued he was at risk of getting the virus); *United States v. Amato, et al.*, No. 19-CR-442 (E.D.N.Y. Mar. 27, 2020) (Glasser, J.) (denying Scorcia's application for

---

[1] Inmates also may secure emergency bail under 18 U.S.C. § 3142(i).

emergency release based on COVID-19); *United States v. Brown,* No. 19-CR-88 (E.D.N.Y.) (Feuerstein, J.) (denying defendant's bail application, finding that he is a danger and has not been shown to be at a greater risk to contract COVID-19 in jail versus out). The government will of course consider whether to consent to release in cases that it has prosecuted. *See*, *e.g.*, *United States v. Marin,* 15-CR-252 (PKC) (inmate in *Allenwood* released under compassionate release; government consented based on age and deteriorating health).

MDC also has a sizable population of pre-trial detainees, and these detainees can make bail applications based on the circumstances presented by COVID-19. The statute that governs is the Bail Reform Act, 18 U.S.C. §§ 3141-56, and bail decisions are based on a highly individualized, fact specific inquiry. Bail applications must be made before the judge who is assigned to the inmate's prosecution. In additional the standard motions for release by pretrial defendants, 18 U.S.C. § 3142(b), or for post-conviction release, 18 U.S.C. § 3143, or bail pending appeal, 18 U.S.C. § 3143(b)(1), a defendant may seek release under 18 U.S.C. § 3142(i), which provides that a "judicial officer may, by subsequent order, permit the temporary release of [a] person, in the custody of a United States marshal or another appropriate person, to the extent that the judicial officer determines such release to be necessary for preparation of the person's defense or for another compelling reason." Certain extreme medical circumstances may present "compelling reasons" that could warrant a highly circumscribed release. *See United States v. Scarpa*, 815 F. Supp. 88 (E.D.N.Y. 1993). Various applications of this type have already been made in the EDNY. *See United States v. Lipsky* No. 19-CR-203 (E.D.N.Y. Mar. 24, 2020) (Garaufis, J.) (denying defendant's emergency bail application seeking release from the MDC based on the general risk of contracting COVID-19 at the MDC); *United States v. Campbell,* No. 18-CR-467 (E.D.N.Y. Mar. 25, 2020) (DeArcy Hall, J.) (denying defendant's emergency bail

application due to COVID-19, ruling that no exceptional circumstances existed pursuant to 18 U.S.C. § 3145).

Most significant here, these various avenues are the appropriate way for the individuals incarcerated at MDC to pursue the fact-specific determinations needed to decide whether they can be released. The need for a sweeping TRO is unnecessary where, as here, Petitioners and others incarcerated at the MDC have alternative methods for seeking early release. *See Canadian St. Regis Band of Mohawk Indians ex rel. Francis v. Town of Bombay, NY*, 484 F. App'x 586, 588 (2d Cir. 2012) (TRO denied in part because of the existence of alternative remedies); *SEC v. Geon Industries, Inc.*, 531 F.2d 39, 55 (2d Cir. 1976) (justifying denial of the injunction in part because of the availability of the alternative remedies).

Moreover, "[i]t is hornbook law that 'the general purpose of a preliminary injunction is to preserve the status quo pending final determination of the action.'" *Unicon Mgmt. Corp. v. Koppers Co.*, 366 F.2d 199, 204 (2d Cir. 1966) (emphasis added)). Further, the interim injunctive relief Petitioners seek here is inappropriate because it is the same as the relief Petitioners ultimately seek through their writ of habeas corpus -- release from detention. *See, e.g., Powell v. Fannie Mae*, No. 16-cv-1359 (LTS) (KNF), 2017 WL 712915, at *2 (S.D.N.Y. Feb. 2, 2017) (report and recommendation) (the "purpose of a preliminary injunction is to preserve the status quo between the parties pending a full hearing on the merits," and such injunctive relief "is improper where it would give the plaintiff substantially all the ultimate relief [he] seeks"); *Guy v. Tanner*, No. 13-cv-6750, 2014 WL 2818684, at *4 (E.D. La. June 23, 2014) ("Guy's motion is no more than a veiled attempt to expedite the resolution of his habeas petition. This is not a proper basis for issuing an injunction."); *Idowu v. Ridge*, No. 03-cv-1293, 2003 WL 21805198, at *6 (N.D. Tex. Aug. 4, 2003) ("In this instance, petitioner seeks a TRO not to

preserve the status quo, but rather, to obtain expeditious resolution of his habeas petition. The Court need not determine the propriety of seeking a TRO in such instances.").  Indeed, the relief sought by Petitioners is not "'temporary' or 'preliminary,' but rather is the exact same ultimate relief [he] seeks in [his] petition." *Taiebat v. Scialabba*, 2017 WL 747460, at *3 (N.D. Cal. Feb. 27, 2017) (denying motion for a preliminary injunction) (citing *Senate of State of Cal. v. Mosbacher*, 968 F.2d 974, 978 (9th Cir. 1992) ("[a] judgment on the merits in the guise of preliminary relief is a highly inappropriate result")); *Moshin v. Cissna*, No. 18-CV-2931 (E.D.N.Y. May 31, 2018) (denying plaintiffs' motion for a preliminary injunction, as the plaintiffs' "request[] for relief that is the ultimate relief in a petition not available at preliminary injunction") (Vitaliano, J.).

### 2. Orders of Release From Custody Are Not the Appropriate Remedy Here

An order of release from custody is not appropriate here where Petitioners allege constitutionally deficient conditions.  Deprivations of constitutional rights while in custody can generally be addressed by habeas corpus relief, 28 U.S.C. § 2241, mandating the alleviation of the unconstitutional condition or the release of the prisoner.  *See Sanford v. Bruno*, No. 17-CV-5132, 2018 WL 2198759, at *6 (E.D.N.Y. May 14, 2018) (Cogan, J.) ("Deprivations of constitutional rights while in custody can generally be addressed by habeas corpus relief, 28 U.S.C. § 2241, mandating the alleviation of the unconstitutional condition or the release of the prisoner); *see also Fulton v. Core Servs. Grp. Inc*., No. 19CV7050PKCSJB, 2020 WL 352495, at *3 (E.D.N.Y. Jan. 21, 2020) (Chen, J.) (citing Sanford).  However, Courts are reluctant to release prisoners without first allowing the government first to attempt to alleviate any alleged unconstitutional condition of confinement.  *See Simmons v. Reynolds*, 898 F.2d 865, 868-69 (2d Cir. 1990) ("[a]lthough the major function of the writ of habeas corpus has always been to obtain

release from illegal custody, the statute empowering federal courts to grant the writ does not provide immediate release as the only relief available to a petitioner.  Instead, it directs the court to 'dispose of the matter as law and justice require.' 28 U.S.C. § 2243.  Thus district courts may fashion appropriate relief other than immediate release.") (*citing Preiser v. Rodriguez*, 411 U.S. 475, 484-86 (1973)).

As set forth in Respondent's principal opposition brief, BOP and MDC have taken strong measures to reduce the risk of COVID-19 for inmates and have reduced inmate populations, increased sanitation and screening, limited visitors, increased testing and improved isolation protocols.  But even if, *arguendo*, the Court were to accept Petitioners' baseless assertions as to the conditions of confinement at MDC, the proper remedy here is an order directed at the allegedly constitutionally deficient conditions — *not* an order allowing for the blanket release of BOP prisoners into New York City.

Moreover, serious medical conditions have only been grounds for release on bail in a handful of situations, specifically where the petitioner himself is gravely ill and release was to a medical facility to receive specialized care. *See United States v. Mett*, 41 F.3d 12821, 1282 n.4 (9th Cir. 1994) (explaining that special circumstances warranting bail "include a serious deterioration of health while incarcerated[.]") (internal quotation marks and citations omitted); *Johnston v. Marsh*, 227 F.2d 528, 529 (3rd Cir. 1955) (affirming bail where petitioner, an advanced diabetic who was "rapidly progressing toward total blindness," was not given general release but admitted to a private hospital for medically advanced treatment).  Given the current facts as alleged by Petitioners, there is no allegation that Petitioners themselves are in need of urgent medical care.  Nor is there any basis to believe that, even if they were in need of medical care, they would be unable to receive such treatment while still incarcerated.

### 3. BOP Issues Additional Guidance

On March 31, 2020, after Respondent had submitted its Opposition, the BOP ordered the implementation of "Phase 5 of its COVID-19 Action Plan," effective tomorrow, April 1, 2020 (referred to as "Phase 5") Phase 5. (https://www.bop.gov/resources/news/20200331_covid19_action_plan_5.jsp.)

In light of the BOP's directive, the MDC has taken immediate steps to implement Phase 5 as described in the attached Supplemental Declaration of Associate Warden Milinda King *See* Supplemental Declaration of Associate Warden Milinda King ("King Supp. Decl.") filed herewith.

### CONCLUSION

For all of the foregoing reasons, Petitioners have not satisfied their heavy burden of establishing entitlement to mandatory injunctive relief, and their Motion for a Temporary Restraining Order should be denied.

Dated: Brooklyn, New York  
      April 1, 2020

RICHARD P. DONOGHUE  
United States Attorney  
*Counsel for Respondent*  
Eastern District of New York  
271-A Cadman Plaza East, 7th Fl.  
Brooklyn, New York 11201

By:    s/ James R. Cho  
       JAMES R. CHO  
       Assistant United States Attorney  
       (718) 254-6519  
       james.cho@usdoj.gov