
**U.S. Department of Justice**
Federal Bureau of Prisons

O P E R A T I O N S   M E M O R A N D U M
OPI:                           RSD/RRM
NUMBER:                 001-2020
DATE:                         April 3, 2020
EXPIRATION DATE:   April 3, 2021

# Home Confinement under the First Step Act

　　　　　/s/
*Approved:*  Hugh J. Hurwitz
Assistant Director,  Federal Bureau of Prisons

The First Step Act of 2018 (FSA) contained additional requirements for the Bureau of Prisons (Bureau) in placing inmates in home confinement generally, and re-established and expanded a pilot program under the Second Chance Act to place elderly and terminally ill inmates in home confinement.

The terms "home confinement" and "home detention" are used interchangeably in this Operations Memorandum.

Institution Supplement.  None required.  Should local facilities make any changes outside the required changes in the national policy or establish any additional local procedures to implement the national policy, the local Union may invoke to negotiate procedures or appropriate arrangements.

1.  **HOME CONFINEMENT FOR LOW RISK OFFENDERS**

Section 602 of the FSA modified 18 U.S.C. § 3621 (c)(1), authorizes the Bureau to maximize the amount of time spent on home confinement when possible.  The provision now states, with the new FSA language in **bold**,

"Home confinement authority. – The authority under this subsection may be used to place a prisoner in home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months.  **The Bureau of Prisons shall, to the extent practicable, place prisoners with lower risk levels and lower needs on home confinement for the maximum amount of time permitted under this paragraph**."

The Bureau interprets the language to refer to inmates that have lower risks of reoffending in the community, and reentry needs that can be addressed without RRC placement. The Bureau currently utilizes home confinement for these inmates. Accordingly, staff should refer eligible inmates for the maximum amount of time permitted under the statutory requirements.

The statutory language will be added to the Program Statement **Home Confinement**.

## 2. PILOT PROGRAM FOR ELIGIBLE ELDERLY OFFENDERS AND TERMINALLY ILL OFFENDERS

Section 603 (a) of the FSA reauthorized and modified the pilot program conducted under the Second Chance Act, 34 U.S.C. § 60541, as follows:

(a) **Scope of Pilot**

The Bureau shall conduct a pilot program to determine the effectiveness of removing eligible elderly offenders and eligible terminally ill offenders from Bureau facilities and placing such offenders on home detention until the expiration of the prison term to which the offender was sentenced.

Under 34 U.S.C. § 60541 (h), the pilot will be conducted during Fiscal Years 2019 through 2023.

(b) **Placement in home detention**

The Bureau may release some or all eligible elderly offenders and eligible terminally ill offenders from Bureau facilities to home detention, upon written request from either the Bureau staff, or an eligible elderly offender or eligible terminally ill offender.

(c) **Waiver**

Under 34 U.S.C. § 60541 (g)(1)(C), the Bureau is authorized to waive the requirements of section 3624 of Title 18 [home confinement for the shorter of 10 percent of the term of imprisonment of that prisoner or 6 months] as necessary to provide for the release of some or all eligible elderly offenders and eligible terminally ill offenders from Bureau facilities to home detention for the purposes of the pilot program.

(d) **Violation of terms of home detention**

A violation by an eligible elderly offender or eligible terminally ill offender of the terms of home detention (including the commission of another Federal, State, or local crime) shall result in the removal of that offender from home detention and the return of that offender to the designated Bureau institution in which that offender was imprisoned immediately before placement on home detention as part of this pilot, or to another appropriate Bureau institution, as determined by the Bureau.

The Bureau will remove an inmate from this pilot in accordance with the Program Statement **Inmate Discipline Program**, and the Program Statement **Home Confinement**.

**(e) Definitions**

The following statutory definitions set out criteria for the implementation of this pilot program only:

**Eligible elderly offender** means an offender in the custody of the Bureau-

(1) who is not less than 60 years of age;

(2) who is serving a term of imprisonment that is not life imprisonment based on conviction for an offense or offenses that do not include any crime of violence (as defined in section 16 of Title 18), sex offense (as defined in section 20911(5) of this title), offense described in section 2332b(g)(5)(B) of Title 18, or offense under chapter 37 of Title 18, and has served 2⁄3 of the term of imprisonment to which the offender was sentenced;

(3) who has not been convicted in the past of any Federal or State crime of violence, sex offense, or other offense described in paragraph (2), above.

(4) who has not been determined by the Bureau, on the basis of information the Bureau uses to make custody classifications, and in the sole discretion of the Bureau, to have a history of violence, or of engaging in conduct constituting a sex offense or other offense described in paragraph 2 above;

(5) who has not escaped, or attempted to escape, from a Bureau of Prisons institution (to include all security levels of Bureau facilities);

(6) with respect to whom the Bureau of Prisons has determined that release to home detention under this section will result in a substantial net reduction of costs to the Federal Government; and

(7) who has been determined by the Bureau to be at no substantial risk of engaging in criminal conduct or of endangering any person or the public if released to home detention.

**Eligible terminally ill offender** means an offender in the custody of the Bureau who—

(1) is serving a term of imprisonment based on conviction for an offense or offenses that do not include any crime of violence (as defined in section 16(a) of Title 18, United States Code), sex offense (as defined in section 111(5) of the Sex Offender Registration and Notification Act (34 U.S.C. § 20911(5))), offense described in section 2332b(g)(5)(B) of Title 18, United States Code, or offense under chapter 37

of Title 18, United States Code;

(2) satisfies the criteria specified in paragraphs 3 through 7 included in the Eligible Elderly Offender definition, above; and

(3) has been determined by a medical doctor approved by the Bureau, i.e. Clinical Director of the local institution, to be:

- in need of care at a nursing home, intermediate care facility, or assisted living facility, as those terms are defined in section 232 of the National Housing Act (12 U.S.C. § 1715w); or

- diagnosed with a terminal illness.

**Home detention** has the same meaning given the term in the Federal Sentencing Guidelines as of April 9, 2008, and includes detention in a nursing home or other residential long-term care facility.   As with all home confinement placements, the home must be found to be appropriate under the provisions of the Program Statement **Home Confinement**.

**Term of imprisonment** includes multiple terms of imprisonment ordered to run consecutively or concurrently, which shall be treated as a single, aggregate term of imprisonment for purposes of this section.

 **(f)  Procedures**

Offenders referred under this pilot shall be processed for home detention utilizing current RRC/Home Confinement procedures.

**For Eligible Elderly Offenders**, a BP-A0210, Institutional Referral for CCC Placement, will be completed.  Staff should refer all inmates meeting criteria (1) through (5) in the definition of Eligible Elderly Offender, above.  Reentry Services Division (RSD) staff will determine if the inmate meets criteria (6) and (7) under the definition.  A clear annotation will be made on the referral packet that "**This inmate is being referred for Home Confinement placement under the provisions contained in the First Step Act for placement of eligible elderly offenders and eligible terminally ill offenders**."

**For Eligible Terminally Ill Offenders**, to include debilitated offenders that may need placement in nursing home, intermediate care facility, or assisted living facility, institution staff  will refer the inmate for a Reduction in Sentence (RIS) under Program Statement **Compassionate Release/Reduction in Sentence: Procedures for Implementation of 18 U.S.C. §§ 3582 and 4205(g)**.  If not appropriate for a RIS, the Office of General Counsel will provide RSD the RIS packet for consideration under this pilot.

### (g) Reporting and Tracking

34 U.S.C. § 60541 (g) (4), as amended by the FSA, requires an evaluation of the pilot program, and a report to Congress after its conclusion in 2023.  The following data points, at a minimum,  will be tracked by RSD to assist with this evaluation and report:

- The number of Eligible Elderly Inmates referred to RSD;
- The number of Eligible Terminally Ill Inmates referred to RSD;
- The number of placements in home detention for each category;
- The length of time of home confinement afforded under each category;
- The estimated amount net reduction of costs to the Federal Government for each case; and
- The estimated amount net reduction of costs to the Federal Government for the pilot period.

## ADDENDUM – REFERENCED AUTHORITIES

### 18 U.S.C. § 16  -  Crime of violence defined

The term "crime of violence" means–

(a)   an offense that has as an element the use, attempted use, or threatened use of physical force against the person or property of another, or

(b)   any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of  committing the offense.

*NOTE:  34 U.S.C. § 60541, as amended by the FSA, provides that section 16 (a) and (b) be applied when determining eligibility of an elderly offender;  but only section 16 (a) should be applied when determining the eligibility of a terminally ill offender under this pilot.*

Please contact the Office of General Counsel for any questions of whether an offense is a crime of violence under 18 U.S.C. § 16.

### 34 U.S.C. § 20911 (5) -  Relevant definitions, including Amie Zyla expansion of sex offender definition and expanded inclusion of child predators

(A) Generally

Except as limited by subparagraph (B) or (C), the term "sex offense" means–

(i)  a criminal offense that has an element involving a sexual act or sexual contact with  another;

(ii) a criminal offense that is a specified offense against a minor;

(iii) a Federal offense (including an offense prosecuted under section 1152 or 1153 of Title 18) under section 1591, or chapter 109A, 110 (other than section 2257, 2257A, or 2258), or  117, of Title 18;

(iv) a military offense specified by the Secretary of Defense under section 115(a)(8)(C)(i)  of Public Law 105-119 (10 U.S.C. 951 note); or

(v) an attempt or conspiracy to commit an offense described in clauses (i) through (iv).

(B)   Foreign convictions

A foreign conviction is not a sex offense for the purposes of this subchapter if it was not

obtained with sufficient safeguards for fundamental fairness and due process for the accused under guidelines or regulations established under section 20912 of this title.

(C) Offenses involving consensual sexual conduct

An offense involving consensual sexual conduct is not a sex offense for the purposes of this subchapter if the victim was an adult, unless the adult was under the custodial authority of the offender at the time of the offense, or if the victim was at least 13 years old and the offender was not more than 4 years older than the victim.

**18 U.S.C. § 2332b(g)(5)(B)  - Acts of terrorism transcending national boundaries**

A violation of the following sections of Title 18, United States Code:

32 (relating to destruction of aircraft or aircraft facilities),
37 (relating to violence at international airports),
81 (relating to arson within special maritime and territorial jurisdiction),
175 or 175b (relating to biological weapons),
175c (relating to variola virus),
229 (relating to chemical weapons),
351, Subsections (a), (b), (c), or (d) (relating to congressional, cabinet, and Supreme Court assassination and kidnaping),
831 (relating to nuclear materials),
832 (relating to participation in nuclear and weapons of mass destruction threats to the United States),
842(m) or (n) (relating to plastic explosives),
844(f)(2) or (3) (relating to arson and bombing of Government property risking or causing death),
844(i) (relating to arson and bombing of property used in interstate commerce),
930(c) (relating to killing or attempted killing during an attack on a Federal facility with a dangerous weapon),
956(a)(1) (relating to conspiracy to murder, kidnap, or maim persons abroad),
1030(a)(1) (relating to protection of computers),
1030(a)(5)(A) resulting in damage as defined in 1030(c)(4)(A)(i)(II) through (VI) (relating to protection of computers),
1114 (relating to killing or attempted killing of officers and employees of the United States),
1116 (relating to murder or manslaughter of foreign officials, official guests, or internationally protected persons),
1203 (relating to hostage taking),
1361 (relating to government property or contracts),
1362 (relating to destruction of communication lines, stations, or systems),
1363 (relating to injury to buildings or property within special maritime and territorial jurisdiction of the United States),
1366(a) (relating to destruction of an energy facility),
1751(a), (b), (c), or (d) (relating to Presidential and Presidential staff assassination and kidnaping),

1992 (relating to terrorist attacks and other acts of violence against railroad carriers and against   mass transportation systems on land, on water, or through the air),

2155 (relating to destruction of national defense materials, premises, or utilities),

2156 (relating to national defense material, premises, or utilities),

2280 (relating to violence against maritime navigation),

2280a (relating to maritime safety),

2281 through 2281a (relating to violence against maritime fixed platforms),

2332 (relating to certain homicides and other violence against United States nationals occurring outside of the United States),

2332a (relating to use of weapons of mass destruction),

2332b (relating to acts of terrorism transcending national boundaries),

2332f (relating to bombing of public places and facilities),

2332g (relating to missile systems designed to destroy aircraft),

2332h (relating to radiological dispersal devices),

2332i (relating to acts of nuclear terrorism),

2339 (relating to harboring terrorists),

2339A (relating to providing material support to terrorists),

2339B (relating to providing material support to terrorist organizations),

2339C (relating to financing of terrorism),

2339D (relating to military-type training from a foreign terrorist organization), or

2340A (relating to torture).

A violation of the following sections of Title 42, United States Code:

2122 (relating to prohibitions governing atomic weapons), or
2284 (relating to sabotage of nuclear facilities or fuel).

A violation of the following sections of Title 49, United States Code:

46502 (relating to aircraft piracy),

46504 - the second sentence of the section (relating to assault on a flight crew with a dangerous weapon),

46505(b)(3) or (c) (relating to explosive or incendiary devices, or endangerment of human life by means of weapons, on aircraft),

46506 if homicide or attempted homicide is involved (relating to application of certain criminal laws to acts on aircraft), or

60123(b) (relating to destruction of interstate gas or hazardous liquid pipeline facility).

A violation of the following section of Title 21:

960, which is section 1010A of the Controlled Substances Import and Export Act (relating to narco-terrorism).

### 18 U.S.C. Chapter 37 - Espionage and Censorship

792, Harboring or Concealing Persons

   793, Gathering, Transmitting or Losing Defense Information
   794, Gathering or Delivering Defense Information to Aid Foreign Government
   795, Photographing and Sketching Defense Installations
   796, Use of Aircraft for Photographing Defense Installations
   797, Publication and Sale of Photographs of Defense Installations
   798, Disclosure of Classified Information
   798a, Temporary Extension of Section 794
   799, Violation of Regulations of National Aeronautics and Space Administration

## 12 U.S.C. § 1715w - Mortgage insurance for nursing homes, intermediate care facilities, and board and care homes

  (a) Definitions - For the purposes of this section–

    (1) the term "**nursing home**" means a public facility, proprietary facility or facility of a private nonprofit corporation or association, licensed or regulated by the State (or, if there is no State law providing for such licensing and regulation by the State, by the municipality or other political subdivision in which the facility is located), for the accommodation of convalescents or other persons who are not acutely ill and not in need of hospital care but who require skilled nursing care and related medical services, in which such nursing care and medical services are prescribed by, or are performed under the general direction of, persons licensed to provide such care or services in accordance with the laws of the State where the facility is located;

    (2) the term "**intermediate care facility**" means a proprietary facility or facility of a private nonprofit corporation or association licensed or regulated by the State (or, if there is no State law providing for such licensing and regulation by the State, by the municipality or other political subdivision in which the facility is located) for the accommodation of persons who, because of incapacitating infirmities, require minimum but continuous care but are not in need of continuous medical or nursing services;

    (3) the term a "**nursing home**" or "**intermediate care facility**" may include such additional facilities as may be authorized by the Secretary for the nonresident care of elderly individuals and others who are able to live independently but who require care during the day; . . .

    (4) the term "**assisted living facility**" means a public facility, proprietary facility, or facility of a private nonprofit corporation that--

      a. is licensed and regulated by the State (or if there is no State law providing for such licensing and regulation by the State, by the municipality or other political subdivision in which the facility is located);

      b. makes available to residents supportive services to assist the residents in carrying out activities of daily living, such as bathing, dressing, eating, getting

in and out of bed or chairs, walking, going outdoors, using the toilet, laundry, home management, preparing meals, shopping for personal items, obtaining and taking medication, managing money, using the telephone, or performing light or heavy housework, and which may make available to residents home health care services, such as nursing and therapy; and

c. provides separate dwelling units for residents, each of which may contain a full kitchen and bathroom, and which includes common rooms and other facilities appropriate for the provision of supportive services to the residents of the facility;