


**U.S. Department of Justice**

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

April 13, 2020

**By ECF**

Honorable Rachel P. Kovner
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

> Re: *Chunn, et al. v. Warden Derek Edge*,
> Civil Action No. 20-cv-1590 (Kovner, J.) (Mann, M.J.)

Dear Judge Kovner:

Pursuant to the Court's April 11, 2020 Order, and in advance of the April 13, 2020 Court conference, Respondent Warden Derek Edge respectfully submits this letter to outline his objections to Petitioners' discovery demands, including objections based on burdensomeness.

As set forth in Respondent's April 10, 2020 letter-motion (Dkt. No. 37), and as described in detail below, Respondent respectfully submits that good cause does not exist for expedited discovery in this matter. Petitioners' inconsistent positions and onerous discovery demands make clear that they are on an unwarranted fishing expedition here. Petitioners' request for discovery should be denied because the "expedited" discovery that they seek to support their contemplated motion for a preliminary injunction is unwarranted, unnecessary, overbroad, and unduly burdensome.

But as discussed below, should the Court permit limited discovery to occur, Respondent is prepared to engage in reasonable discovery that is no broader than needed to resolve Petitioners' claims in order to not undermine BOP operations and hamper BOP's efforts to protect inmates and staff alike at the Metropolitan Detention Center (MDC) in Brooklyn.

## I.     Procedural Background

On March 27, 2020, Petitioners commenced this habeas action, followed three days later with a motion for a temporary restraining order (TRO), seeking, *inter alia*, the immediate release of the four Petitioners from the MDC due to allegedly unconstitutional conditions of confinement resulting from the global COVID-19 pandemic. Dkt. No. 1.

As Respondent has stated from the outset, Petitioners' habeas petition is not the appropriate vehicle for Petitioners to seek release from the MDC. This is underscored by the fact that in

addition to filing their habeas petition and TRO motion, the four Petitioners separately filed motions seeking compassionate release with their criminal sentencing judges pursuant to 18 U.S.C. 3582(c)(1)(A) (Section 3582 motion). As a result of those Section 3582 motions, two of the Petitioners -- Chunn and McBride -- already have been released from the MDC. The sentencing judges have yet to rule on the Section 3582 motions for the two remaining Petitioners -- Rodriguez and Rabadi.[1]

On April 8, 2020, the Court denied Petitioners' TRO motion in light of, *inter alia*, the existence of alternative remedies available to Petitioners for immediate release pursuant to Section 3582. On Friday, April 10, 2020, following the denial of Petitioners' TRO motion, and pursuant to the Court's April 8, 2020 Order, Respondent submitted the parties' proposed case management plan and set forth his position on the course of this litigation. Dkt. No. 37. Respondent requested a stay of discovery pending briefing on his anticipated motion to dismiss. *See id.* Further, Respondent argued that Petitioners have not established "good cause" to warrant any discovery in this habeas proceeding and that, in any event, Petitioners' request for expedited discovery was unreasonable. *See id.*

On Saturday, April 11, 2020, the Court set a telephone conference for April 13, 2020 at 3 p.m. While reserving judgment on Respondent's motion to stay, the Court "(1) directs petitioners to promptly file on ECF the discovery demands that they served on April 10, 2020; (2) authorizes petitioners to serve their Rule 30(b)(6) notice of deposition on April 12, 2020 as proposed; (3) directs petitioners to file the Rule 30(b)(6) notice on ECF once served; and (4) directs respondent to be prepared to discuss during the teleconference any objections to petitioners' discovery demands, including objections based on burdensomeness." Dkt. Entry dated April 11, 2020. Following the Court's Order, Petitioners responded to Respondent's April 10th letter arguing: (1) good cause exists for discovery in this habeas proceeding; (2) Petitioners' proposed expedited discovery plan is reasonable; (3) the Court should deny the stay request; and (4) the scope of their discovery requests is reasonable. Dkt. No. 39. Petitioners also filed their notice of inspection that they served on Respondent. *See* Dkt. No. 40.

On April 12, 2020, Respondents served their Fed. Civ. P. 30(b)(6) notice on Respondent, and filed same. *See* Dkt. No. 41.

Respondent further met and conferred with Petitioners on Monday, April 13th, regarding Petitioners' Rule 30(b)(6) Notice. Given the fast-moving nature of this litigation, Respondent raises his objections to Petitioners' discovery demands below, and reserves the right to object formally and comprehensively to Petitioners' discovery demands at the appropriate time.

---

[1] Petitioner Rodriguez and Rabadi raise a plethora of reasons in their Section 3582 motions for seeking release, including, in part, the unconstitutional conditions of confinement at the MDC alleged here.

## II. Respondent Objects to Petitioners' "Three" Document Requests

### A. Petitioners' Document Demands

In the parties' proposed case management plan (Dkt. No. 37-1) submitted to the Court on April 10, 2020, Petitioners requested that "Respondent produce three documents," as follows:

1. Testing protocols for Covid-19 in effect at the MDC from February 1, 2020 to date.
2. Documents sufficient to show how much soap was received at the MDC from February 1, 2020 to date.
3. All sick call requests for medical care made by people incarcerated at MDC from March 13, 2020, in redacted form to omit the person's name and DIN number.

Dkt. No. 37-1 (proposed case management plan).

### B. Petitioners' Overly Broad Document Demands Seek Information Relating To Individuals Other Than Petitioners

#### 1. As a Threshold Matter, Respondent Objects to Any Discovery Beyond the Two Remaining Named Petitioners In this Action -- Rodriguez and Rabadi

Notwithstanding Petitioners' dubious request for "three documents," (Dkt. No. 37-1), Respondent preliminarily objects to any request for information relating to inmates other than the two remaining Petitioners in this action -- Rodriguez and Rabadi.

On April 8, 2020, Petitioners represented to the Court, after the denial of their TRO motion, that they were still seeking relief with respect to the Petitioners that remain incarcerated (*i.e.*, Rodriguez and Rabadi). *See* Tr. 9:8-11 (Petitioners' Counsel: "If the Court is inclined to deny the application for the reasons that the matters are pending before the sentencing judges, *we have relief that we would like to get for our clients who are still there*") (emphasis added). Petitioners further argued that they still sought to secure the release of Petitioners through their anticipated preliminary injunction motion, and sought discovery in connection with their motion. Tr. 10:5-9 (Petitioners' Counsel: "So, we're anxious to *move forward to protect our clients if they are going to remain there or to get a decision from the Court that they can be released* and think that it's appropriate to ask the Court to make that decision at this time.") (emphasis added).

However, Petitioners' document requests (Dkt. No. 37-1), Notice of Inspection (Dkt. No. 40, Ex. A), and Rule 30(b)(6) Notice (Dkt. No. 41) (collectively, "Discovery Demands"), reflect that Petitioners seek discovery far beyond the two remaining Petitioners, even though Petitioners, as of the filing of this letter, have not sought class certification.

Petitioners' purported Discovery Demands amount to nothing more than an unwarranted fishing expedition, far beyond any discovery typically permitted in habeas proceedings, and Petitioners cannot establish any cause, let alone "good cause," for their far-reaching Discovery

Demands, for the reasons set forth below. *See United States v. Berrios*, 501 F.2d 1207, 1211 (2d Cir. 1974).

## 2. Respondent's Initial Objections and Responses to Petitioners' Document Requests

In the event the Court orders limited discovery here, Respondent objects to Petitioners' document requests as set forth below.

### a. Document Request No. 1

In Document Request No. 1, Petitioners seek information relating to "testing protocols" at the MDC. Respondent objects to Request No. 1 on the grounds that the information Petitioners seek is publicly available, and easily accessible to Petitioners.

The BOP already provides information relating to "testing protocols" to the Court pursuant to Administrative Order No. 2020-14. The Administrative Order states in relevant part:

> ORDERED, that the Wardens of MDC Brooklyn, MCC New York, and QDF provide to this Court in writing, twice weekly on the schedule below, a status report concerning the incidence of infection of COVID-19 at each facility and the measures undertaken to mitigate the spread of COVID-19 within each facility, to include, but not limited to, the following information:
>
> > 1) *Protocols* for screening and *testing* inmates, staff, and other[s] entering or leaving each facility;
> > 2) The number of inmates tested and the number of positive tests;
> > 3) The number of staff and/or others testing positive;
> > 4) All efforts undertaken to mitigate the spread of COVID-19 both generally, and in response to any symptomatic inmate(s) and/or positive test(s) . . . .

Administrative Order No. 2020-14 (emphasis added). The BOP's status reports are posted on the Court's website. *See* https://www.nyed.uscourts.gov/coronavirus. Respondent has already provided status reports to the Court on April 3, April 7, and April 9, and will continue to do so.

Accordingly, and without waiving or in any way limiting Respondent's objections or any future arguments regarding this document request, Respondent has already complied with Petitioners' request.

### b. Document Request No. 2

In Document Request No. 2, Petitioners seek information relating to soap deliveries at the MDC. This request is overly broad inasmuch as it seeks information relating to the impact of soap

deliveries on *all* inmates at the MDC, not just Petitioners.[2]  However, as conceded in Petitioners' April 11th letter, they are not seeking class-wide discovery at this stage.  Dkt. No. 39 at 9 ("*Petitioners seek limited, expedited discovery aimed at determining how Respondent is undertaking to mitigate Petitioners' risk of infection, not class-wide discovery*") (emphasis added).

Further, Petitioners' request for all soap deliveries is overly broad and is disproportionate to the needs of this case.  Different departments within the MDC may have ordered soap separately, and records documenting purchases and shipments to the MDC are not maintained centrally or electronically.  As such, identifying all soap shipments to the MDC is not readily accessible to staff at the MDC.

Notwithstanding the above, and without waiving or in any way limiting Respondent's objections or any future arguments regarding this document request, counsel is conferring with the client, and to the extent possible, Respondent will gather and produce any non-privileged, responsive documents.

### c.      Document Request No. 3

In Document Request No. 3, Petitioners seek all sick call requests for all inmates at the MDC -- not limited to the two remaining Petitioners Rodriguez or Rabadi.  However, notably, in the Section 3582 motions filed by Rodriguez and Rabadi, neither Petitioner mentions that they made any sick call requests, nor mention any purported increase in sick call requests.  More important, both Petitioners notified their sentencing judges that they are asymptomatic at this time and, as such, presumably would not have made any sick call requests.  *See generally* Rodriguez, Dkt. No. 329 at 5 (Rodriguez stated "the risk is heightened" at the MDC, but does not say he is symptomatic), Rodriguez, Dkt. No. 333 at 1, 2 ("Admittedly we are discussing *risk* of serious harm here;" "In other words Rodriguez is not yet exhibiting respiratory distress, so as far as he can tell no risk of health problem exists"); Rabadi, Dkt. No. 88 at 12 (". . . Mr. Rabadi is thus far not symptomatic"); *see also* Rabadi, Dkt. Nos. 84, 85, and 90.

Respondent also objects to Document Request No. 3 to the extent it seeks information relating to inmates who are non-parties to this action, as an invasion of their privacy, overly burdensome, and not proportional to the needs of the case.

Further, inmates have multiple methods for making sick call requests.  For example, inmates may make sick call requests either in person to MDC staff, by submitting a form to MDC Staff, or submitting an electronic request through the TRULINCS system.  Given the multiple methods by which inmates can make sick call requests, the BOP would need to conduct an exhaustive search for these records.  More important, sick call requests, whether in hard copy or electronic format, are not necessarily maintained in a central location.  Petitioners' request for all

---

[2] Notably, in their Section 3582 motions filed by the two remaining Petitioners (Rodriguez and Rabadi) before their sentencing judges, neither made any reference to soap or to a lack of soap deliveries to the MDC.  In their Section 3582 motions, Rabadi and Rodriguez make oblique references to "hygiene."  In Rabadi's Section 3852 motion, he states that he is unable to "practice hygiene."  Rabadi, No. 13 Cr. 353 (KMK), Dkt. No. 84 (hereafter "Rabadi, Dkt. No. __").  Rodriguez states in his Section 3582 motion that he cannot "regularly hand hygiene."  Rodriguez, No. 16 Cr. 167 (LAP), Dkt. No. 329 (hereafter "Rodriguez, Dkt. No. __").

sick call requests would require BOP staff members to review the records, including medical records, of more than 1700 inmates currently housed at any one time at the MDC some, of whom, may no longer be housed at the MDC. Petitioners' request is not proportional to the needs of this case especially where, as here, Petitioners seek the release at this time of only the two remaining named Petitioners -- Rabadi and Rodriguez. Given Petitioners' assertion in their April 11th letter that they do not seek class-wide discovery (Dkt. No. 39 at 9), they have no need for the confidential medical information of all inmates at the MDC since March 13, 2020 -- even if inmate names are redacted.

Notwithstanding these objections to Request No. 3, and without waiving or in any way limiting Respondent's objections or any future arguments regarding this document request, the BOP is willing to produce the medical records of Rabadi and Rodriguez, including requests for sick call, if any, submitted on or after March 13, 2020, subject to production of an authorization signed by both inmates. Respondent's counsel has forwarded to Petitioners' counsel a New York HIPAA form for the release of Petitioners' medical records.

## II. Respondent Objects To Petitioners' Inspection Notice

### A. Petitioners' Inspection Notice

Petitioners' Inspection Notice states in relevant part as follows:

PLEASE TAKE NOTICE THAT, pursuant to Rule 34(a)(2) of the Federal Rules of Civil Procedure, Petitioners by and through their attorneys, Emery Celli Brinckerhoff & Abady LLP, the Cardozo Civil Rights Clinic, and Alexander A. Reinert, request permission for Dr. Homer Venters, M.D., and two attorneys for Petitioners from the undersigned counsel, to enter the Metropolitan Detention Center (MDC), located at 80 29th Street, Brooklyn, New York, 11232, on April 21, 2020 at 10:00 am, to review logbooks and posted orders relevant to the conditions alleged in the Petition, inspect the conditions in the facility alleged in the Petition in the following locations, and speak to incarcerated individuals (confidentially) and staff in these locations about those conditions: the Medical Unit, the Intake Unit, all Housing Units (4, 5, 6, 7, and 8), the Special Housing Unit, the Women's Unit, the Isolation Unit, the Commissary, the staff screening area, and cleaning and sanitation areas. During the inspection, counsel and their experts will be permitted to wear personal protective equipment, including facemasks, and carry materials necessary to ensure adequate personal hygiene, including hand sanitizer

*See* Petitioners' April 12, 2020 submission at Ex. A (Dkt. No. 40).

### B. Petitioners' Request for an Inspection of the MDC Is Unnecessary and Duplicative of Expert Evidence Already Submitted By Petitioners to the Court

Respondent objects to Petitioners' inspection notice for the reasons set forth below.

Petitioners have not identified "good cause" for conducting an inspection at the MDC. Petitioners have already submitted to the Court during the TRO proceedings declarations from

four purported experts regarding allegedly unconstitutional conditions at the MDC in support of their request for immediate release. *See, e.g.,* Declaration of Dr. Jonathan Giftos (Dkt. No. 1-5); Declaration of Dr. Jaimie Meyer (Dkt. No. 12-11); Declaration of Dr. Homer Venters (Dkt. No. 26-4); and Declaration of Robert L. Cohen, M.D. (Dkt. No. 26-6). Petitioners' four experts opined in support of the immediate release of Petitioners based on conditions at the MDC, as follows:

- Petitioners' habeas petition included the Declaration of Jonathan Giftos, M.D. Dkt. No. 1-5. Dr. Giftos, who is board certified in internal medicine and addiction medicine, submitted a declaration in support of the release of incarcerated people at the MDC. Giftos Decl. ¶ 4 (Dkt. No. 1-5).

- Petitioners included with their TRO motion the Declaration of Dr. Jaimie Meyer, Assistant Professor of Medicine at Yale School of Medicine and Assistant Clinical Professor of Nursing at Yale School of Nursing in New Haven, Connecticut. Dkt. No. 12-11. She is board certified in Internal Medicine, Infectious Diseases and Addiction Medicine. Dr. Meyer opined that, "The risk posed by infectious diseases in jails and prisons is significantly higher than in the community, both in terms of risk of transmission, exposure, and harm to individuals who become infected." Meyer Decl. ¶ 7 (Dkt. No. 12-11). Dr. Meyer further advocated for the release of inmates from detention centers. Meyer Decl. ¶ 35 (Dkt. No. 12-11).

- On April 3, 2020, Petitioners submitted to the Court a declaration from Homer Venters, a physician, internist and epidemiologist. Dkt. No. 26-4. Dr. Venters expressed his opinions regarding "accepted infection control and surveillance measures" at the MDC, and expressed his views as to measures that should be in place at the MDC. *See* Venters Decl. ¶ 6 (Dkt. No. 26-4). Dr. Venters further opined that, "People identified as high risk should be considered for immediate release based on their risk of serious illness and death from COVID-19 infection." Venters Decl. ¶ 6.d (Dkt. No. 26-4).

- On April 3, 2020, Petitioners submitted to the Court the Declaration of Robert L. Cohen, M.D. (Dkt. No. 26-6). Dr. Cohen is a board-certified medical doctor in the field of internal medicine and an expert in the field of Correctional Medicine. Cohen Decl. ¶ 1 (Dkt. No. 26-6). Dr. Cohen opined that, "In my opinion, testing symptomatic people and asymptomatic people who have been exposed to people who have a confirmed positive COVID-19 test result is necessary to ensure the health and safety of incarcerated people, because unlike nonincarcerated people, one cannot self-quarantine while incarcerated." Cohen Decl. ¶ 10 (Dkt. No. 26-6).

None of Petitioners' four purported experts stated in their opinions that an inspection of the MDC was necessary to reach their conclusions about the need for Petitioners' immediate release. Further, Petitioners, in requesting an inspection, have not asserted that these four experts' declarations were in any way deficient and, thus, warrant the inspection of the MDC. Thus, Petitioners' experts' opinions undermine, rather than support, Petitioners' request for an inspection of the MDC.

In their inspection notice, Petitioners identified Dr. Venters as the expert they intend to have conduct a top-down inspection of the entire MDC. Dr. Venters is the same "expert," who already submitted an unqualified declaration to the Court in support of Petitioners' TRO motion expressing his opinions about conditions at the MDC in support of the release of Petitioners. Nowhere in his declaration, made under oath, does Dr. Venters state that he needed to conduct an inspection of the MDC to reach his expert opinions. Dkt. No. 26-4. Dr. Venters certainly had no trouble expressing his opinions at the MDC without conducting an inspection in the first instance. *See generally* Venters Decl. (Dkt. No. 26-4).

Petitioners have provided no reasons why an inspection is necessary at this time, but was not necessary when the four experts submitted their initial declarations as part of the TRO proceedings. Petitioners' request for an inspection is nothing more than an attempt to further burden BOP staff during a time they are working around the clock to safeguard and protect the inmates under their care.

Conducting an inspection of the MDC by Petitioners' purported expert is not only unnecessary, but would be duplicative of the four expert declarations Petitioners have already submitted to the Court describing conditions at the MDC.

Further, Petitioners have not withdrawn any of their "expert" declarations on the grounds that they are inaccurate or insufficient to establish the allegedly unconstitutional conditions at the MDC. Permitting an onerous and unnecessary inspection of the MDC by Dr. Venters, who has already submitted an expert declaration (Dkt. No. 26-4) (along with declarations by three other experts) in support of Petitioners' habeas petition and already expressed his views regarding conditions at the MDC, is unwarranted, duplicative, burdensome, and nothing more than an unwarranted fishing expedition, and designed to further over-burden an already over-taxed BOP staff.

## C.     Respondent's Additional Objections to an On-site Inspection of the MDC

Respondent further objects to an on-site inspection for the following reasons:

First, Respondent objects to the inspection to the extent any information Petitioners seek from the inspection may be obtained through other discovery methods, and do not require an on-site inspection. For example, during the inspection, Petitioners seek to inspect "logbooks" and "posted orders." An onsite inspection is unnecessary as those documents could be produced, without waiving any objections, pursuant to a request for documents.

Second, Respondent objects on the grounds that the inspection is not limited to any specific or reasonable duration. Further, the inspection is not limited in scope or nature.

Third, Respondent objects to the request by Dr. Venters and two attorneys to talk to "incarcerated individuals (confidentially)." An inspection of the MDC as requested by Petitioners, without any limitations, violates the privacy rights and interests of inmates housed at the MDC who are not parties to this action. Further, Petitioners provide no explanation as to the nature of these "confidential" interviews. If these conversations were "confidential," Respondent would

have no way of ascertaining the veracity of any information provided during these "confidential" interviews. Further, authorities cited by Petitioners in their April 11th letter do not support the far-reaching inspection set forth in their inspection notice. For example, Petitioners cite *Mack v. City of New York*, No. 14 Civ. 3321 (S.D.N.Y.) Dkt. 36, in support of an inspection of the MDC. Notably, the court in *Mack*, while authorizing a site visit by plaintiff's attorneys, limited access to certain locations at Riker's Island, prohibited them from bringing any recording or electronic devices, and prohibited plaintiffs' attorneys from "*speak[ing] to any inmate for any reason.*" *See id.* (emphasis added). The Order further stated that "*Plaintiff's attorneys shall not interview or question any DOC staff for any reasons.*" *See id.* (emphasis added).[3] Respondent further notes that inmates at the MDC likely have had, or still have, counsel with respect to their criminal cases, and Petitioners have not stated that their criminal defense attorneys may be present during the interview with Petitioners' two attorneys and their expert.

Fourth, Dr. Venters and two attorneys seek to talk to "staff." Any interrogation of staff first requires that Petitioners submit a *Touhy* request. *See* 28 C.F.R. § 16.23 ("(c) If oral testimony is sought by a demand in a case or matter in which the United States is a party, an affidavit, or, if that is not feasible, a statement by the party seeking the testimony or by the party's attorney setting forth a summary of the testimony sought must be furnished to the Department attorney handling the case or matter.")

Generally, federal regulations forbid Department of Justice employees, including BOP employees, from disclosing Department information or documents unless the Department specifically grants those employees authority to do so. In order to obtain that information, a requester must submit a written statement describing the documents or information requested, and describing the relevance the information has to the proceeding, in order for an informed decision to be made. *See* 28 C.F.R. §§ 16.21-16.29 ("*Touhy* regulations").

The statutory authority for these regulations is found in the Federal Agency Housekeeping Act, 5 U.S.C. § 301, which authorizes the head of every Executive Branch agency to "prescribe regulations for the government of his department, the conduct of its employees, the distribution and performance of its business, and the custody, use and preservation of its records, papers and property." *See United States ex. rel. Touhy v. Ragen*, 340 U.S. 462, 468 (1951). Courts have recognized that an agency's *Touhy* regulations such as those promulgated by the Department of Justice serve the legitimate purpose of "conserv[ing] governmental resources … minimiz[ing] governmental involvement in controversial matters unrelated to official business." *Boron Oil Co. v. Downie*, 873 F.2d 67, 73 (4th Cir. 1989). Such regulations also serve to "centraliz[e] determinations [within the agency] as to whether subpoenas . . . will be willingly obeyed or challenged," thereby avoiding "the possibilities of harm from unrestricted disclosure in court." *Touhy*, 340 U.S. at 468.

The validity of these regulations has been consistently upheld by the United States Supreme Court and courts in numerous jurisdictions. *See, e.g., Touhy*, 340 U.S. at 468 (upholding the FBI's refusal to produce documents sought in a subpoena); *Hasie v. Office of the Comptroller of the*

---

[3] Petitioners also cite *Guadalupe v. City of New York*, 15 Civ. 0220 (CM) (E.D.N.Y.) Dkt. 67-1, in support of an inspection. The cited reference does not relate to any prison inspection.

*Currency of the United States*, 633 F.3d 361 (5th Cir. 2011); *United States v. Soriano-Jarquin*, 492 F.3d 495, 504 (4th Cir. 2007); *In re Elko County Grand Jury*, 109 F.3d 554, 556 (9th Cir. 1997); *Edwards v. United States Dep't of Justice*, 43 F.3d 312, 316-317 (7th Cir. 1994); *Solomon v. Nassau County*, 274 F.R.D. 455, 457 (E.D.N.Y. 2011). In fact, agency housekeeping regulations are accorded the full force and effect of federal law, and a court lacks the authority to compel compliance with a request where such compliance is not authorized pursuant to such regulations. *See Touhy*, 340 U.S. at 468. Here, notwithstanding Petitioners' failure to serve a valid *Touhy* request, subject to review and approval by the DOJ, the BOP would object to interviews of BOP staff during work hours at the MDC, as unduly disruptive to their normal duties safeguarding and protecting inmates at the MDC.

Fifth, Petitioners seek to conduct an inspection of the entire MDC, including areas where the two remaining Petitioners were not even housed (*i.e.*, the Women's Unit). The request is overly broad and unduly burdensome, and not relevant to any of Petitioners' claims.

Sixth, conditions and housing at the MDC have been fluid in light of COVID-19. Conditions at the MDC are constantly changing, and an inspection today would have limited utility.

Seventh, an inspection by two of Petitioners' attorneys and purported expert is both overly burdensome to the BOP, and unduly disruptive to the law enforcement function of the MDC, especially, now where operations at MDC are significantly modified to cope with the current pandemic. The MDC is an administrative security facility that houses inmates ranging from minimum to maximum security classifications. Movement within the MDC is heavily controlled and restricted to ensure the safety and security of inmates and employees at the facility. An uncontrolled inspection of every part of the MDC would be unduly burdensome, and disruptive to the security of the facility.

Eighth, Petitioners have not stated what method they will use to record their observations. Indeed, the BOP would object to the use of any videos and photographs during any visit. The MDC is a secure facility, and an overly broad and unrestricted inspection of the facility that includes videotaping and taking pictures inside the facility raises significant safety and security concerns, implicates the law enforcement privilege, and could severely compromise prison security. Significantly, even the order cited by Petitioners in *Mack*, *supra*, flatly prohibited the use of any recording device.

Ninth, the two remaining Petitioners are still housed at the MDC. Thus, any inspection of the MDC is unnecessary as the information sought by Petitioners' expert can readily be obtained by communicating with Petitioners themselves.

Tenth, the BOP objects to Petitioners' request to the extent Petitioners have failed to articulate a rationale or identify with any specificity a rationale for the inspection, and the relevance to the claims raised in this action.

Eleventh, the BOP objects to Petitioners' requests to the extent they purport to seek information that is not relevant to the subject matter involved in the present action and seek information that is disproportionate to the needs of the case.

Finally, without waiving any additional objections that the BOP may have, the BOP objects to the inspection requests to the extent the inspection violates any other federal or state statute, regulation, executive order, or rule. The burden imposed by allowing an on-site visit at this secure facility, which houses inmates with minimum to maximum security classifications, outweighs any benefit of an inspection.

## IV. Respondent's Objections to Petitioners' Sweeping 30(b)(6) Notice

Around 4:30 p.m. on Easter Sunday, Petitioners served their Rule 30(b)(6) deposition notice (Rule 30(b)(6) Notice). The notice seeks testimony with respect to 9 enumerated subjects with 46 additional subparts (referred to collectively as "55 Topics"). Dkt. No. 41. While Respondent has had less than twenty-four hours to consider and evaluate Petitioners' Rule 30(b)(6) Notice, Respondent sets forth his objections to Petitioners' Rule 30(b)(6) Notice while reserving his right to lodge full and complete objections at the appropriate time.

The 55 Topics identified by Petitioner are overly broad and far reaching. It is unreasonable for Respondent to identify witnesses to provide Rule 30(b)(6) testimony on more than 55 topics by April 17 (three days before the April 20, 2020 deadline arbitrarily set by Petitioners for the 30(b)(6) depositions). Further, contrary to Petitioners' request for one deposition, it is unlikely that one BOP employee would be able to testify as to all 55 Topics.

Respondent next objects to producing witnesses to answer questions on topics that are of little or no relevance to the conditions of confinement of the two remaining Petitioners Rodriguez and Rabadi.

Additionally, most of the information sought may be obtained through other discovery methods, such as document requests or interrogatories. For example, in Topic No. 1, Petitioners seek "total number of BOP employees and incarcerated people at the MDC." The same information may be obtained through document requests or interrogatories. Similarly, in Topic No. 2, Petitioners ask Respondent to identify certain "housing units in the MDC." Petitioners also seek information relating to processes such as determining and assessing or evaluating housing assignments (Topic No. 3), medical care available at the MDC (Topic No. 4), procedures (Topic No. 5), rules and regulations (Topic No. 6), procedures relating to care, custody and supervision (Topic No. 8), and rules (Topic No. 9).

In sum, the production of a number of Rule 30(b)(6) witnesses to testify about Petitioners' 55 Topics relating to information that may be obtained through other discovery methods would impose an undue burden and expense on Respondent.

Should the Court permit these Rule 30(b)(6) depositions to occur, and without waiving or in any way limiting Respondent's objections or any future arguments regarding this request for deposition testimony, Respondent will identify Rule 30(b)(6) witness(es) if the Petitioners agree to streamline their requests for testimony.

Respondent thanks the Court for its consideration of this matter.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By:　　　　　 /s/
James R. Cho
Seth D. Eichenholtz
Joseph A. Marutollo
Paulina Stamatelos
Assistant U.S. Attorneys
(718) 254-6519/7036/6288/6198
james.cho@usdoj.gov
seth.eichenholtz@usdoj.gov
joseph.marutollo@usdoj.gov
pauline.stamatelos@usdoj.gov

cc:　　The Honorable Roanne L. Mann, U.S. Magistrate Judge
　　　　All Counsel of Record (by ECF)