# EMERY CELLI BRINCKERHOFF & ABADY LLP

RICHARD D. EMERY
ANDREW G. CELLI, JR.
MATTHEW D. BRINCKERHOFF
JONATHAN S. ABADY
EARL S. WARD
ILANN M. MAAZEL
HAL R. LIEBERMAN
DANIEL J. KORNSTEIN
O. ANDREW F. WILSON
ELIZABETH S. SAYLOR
KATHERINE ROSENFELD
DEBRA L. GREENBERGER
ZOE SALZMAN
SAM SHAPIRO

ATTORNEYS AT LAW
600 FIFTH AVENUE AT ROCKEFELLER CENTER
10TH FLOOR
NEW YORK, NEW YORK 10020

TEL: (212) 763-5000
FAX: (212) 763-5001
www.ecbalaw.com

DIANE L. HOUK

EMMA L. FREEMAN
DAVID BERMAN
HARVEY PRAGER
SCOUT KATOVICH
NICK BOURLAND
ANDREW K. JONDAHL
ANANDA BURRA
MAX SELVER

April 17, 2020

Hon. Rachel P. Kovner
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

  Re: *Hassan Chunn et al. v. Warden Derek Edge,* 20 Civ. 1590

Dear Judge Kovner:

  Along with the Cardozo Civil Rights Clinic, and Alexander A. Reinert, we represent Petitioners in the above the above-referenced case. In advance of today's 1:00 pm teleconference, Petitioners submit this letter concerning the parameters of Dr. Venters' Rule 34 inspection of the Metropolitan Detention Center next week.

I. <u>Duration</u>

  Petitioners' counsel have conducted numerous Rule 34 inspections of prisons and jails, which have typically lasted a full day or multiple full days. We recognize the need for a durational limitation here given current circumstances, and while Dr. Venters will not stay in the facility any longer than necessary to conduct a proper inspection, two hours would not provide adequate time for him to inspect MDC. Petitioners are aware of no authority requiring such a stringent durational limit on a Rule 34 inspection of a correctional facility. Cf. *Gumm v. Sellers*, No. 5 15-CV-00041, 2017 WL 5885315, at *1 (M.D. Ga. Oct. 20, 2017) (ordering Defendants to permit Plaintiff's expert to inspect prison unit for nine hours).

II. <u>Date and Time</u>

  Petitioners have requested an inspection date during the early part of next week in order to give Dr. Venters adequate time to produce a report in advance of the April 28, 2020 filing deadline for Petitioners' preliminary injunction motion. As we understand from Respondent, there are certain days of the week (Tuesday and Thursday not being among them) that provide greater challenges for Respondent because of movement within the facility. Therefore,

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 2

Petitioners request that the tour be conducted on Tuesday. Dr. Venters has already submitted his security clearance form and our understanding from past experience is that clearance can be obtained quickly.

III.  Locations

The parties agree that the following areas should be inspected by Dr. Venters: (1) one housing unit not under quarantine or isolation; (2) the intake unit; and (3) one quarantine unit. The parties also agree that Dr. Venters should inspect (4) one isolation unit, although Petitioners request that it specifically be K84 and Respondent does not specify.

Petitioners request that Dr. Venters inspect K84 because we understand that the MDC is using on Unit K84 as the primary isolation unit for symptomatic people, and the MDC has placed individuals diagnosed with COVID-19 on Unit K84  For this reason, it is critical that Dr. Venters personally see this isolation unit and evaluate conditions for isolation and treatment in real time.

In order to assess the MDC's overall ability to provide medical care to Petitioners during this pandemic, Dr. Venters must inspect the Health Services Offices and Exam Rooms, which are the medical areas not located on housing units (item 7 on the Petitioners' list). Petitioners allege that: the MDC lacks adequate medical infrastructure to address the spread of infectious disease and treat the people most vulnerable to COVID-19 (Pet. ¶ 58); the MDC lacks specialized equipment necessary to treat people who contract COVID-19 (Pet. ¶ 83); and that the MDC's available spaces for treatment and convalescence are inadequate (Pet. ¶ 80). Dr. Venters needs to view and evaluate the medical areas of the facility, both with respect to their current usage and future capacity. The Government suggests that Dr. Venters should be limited to viewing clinical areas where patients are currently being treated. But that position assumes that current treatment spaces are adequate, and also ignores that as the pandemic expands within the facility, the MDC will need more clinical space, and increased capacity in treatment spaces outside the housing units. If the MDC lacks additional clinical space available beyond the housing units, or if that space is insufficiently equipped or inadequate, those facts are relevant to Dr. Venters' evaluation of the facility's preparedness to treat people like Petitioners who may be sickened by COVID-19.

With respect to the SHU, we understand that the MDC has placed some people who are symptomatic in SHU and thus the conditions there are relevant. Judge Torres herself visited the SHU during her inspection in 2019, and spoke to each person confined there. Counsel for Petitioners has previously visited clients in the MDC SHU, and has also inspected the SHU portions of other prisons and jails. The security in SHU is the highest in the facility, because each person is individually confined in a cell, thus any security issues are in fact lessened in the SHU vis-à-vis more open units. People in the SHU exist in the most restricted and confined conditions in the MDC, and absent the ability to inspect these conditions, Dr. Venters cannot reasonably assess the facility's conditions.

Finally, with respect to the Kitchen, we have received reports that people preparing food in the facility have shown symptoms of COVID-19, and that the sanitation conditions for food

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 3

preparation are inadequate (for example in terms of PPE). Dr. Venters should be permitted to see for himself how food is being handled and prepared, and conditions for workers therein.

IV. Conversations with Incarcerated People

The Court's April 15, 2020 Order directed the parties to attempt to reach agreement on the "protocol for such conversations." Here, Respondent asks that the Court prohibit Dr. Venters from speaking to individuals during his inspection. For the reasons addressed fully during the April 13, 2020 teleconference, it is critical for Dr. Venters to be able to speak with these individuals during the inspection.

Petitioners' proposed protocol, that Dr. Venters be permitted to conduct brief cell-side interviews and interviews with incarcerated people who may be working or moving about the facility, as Judge Torres did during last year's blackout at MDC, is necessary for Dr. Venters to properly understand and evaluate the facility's COVID-19 response. *See United States v. Segura-Genao*, 1:18-Cr-00219, ECF No. 83. To the extent feasible, these interviews should be confidential, so that these individuals feel they can speak freely about medical concerns with Dr. Venters and to avoid concerns they may have about retaliation based on what they tell him. *See Gumm*, 2017 WL 5885315, at *1.

Respondent's only proffered objection is that they would like to personally listen to Dr. Venters' interviews in order to confirm that he is later accurately representing his conversations in his report. Dr. Venters is a highly reputable, longtime public servant and physician who has worked in correctional settings and non-profit organizations; he should be trusted to truthfully report to the Court what people tell him in these conversations.

V. Participants from Petitioners' Side

Respondent objects to allowing Deirdre von Dornum, Attorney-in-Chief of the Federal Defenders in the Eastern District, to participate in the inspection because she is not counsel of record in this case. Ms. von Dornum's participation is critical, in order to address concerns about speaking with clients who are represented by criminal counsel, as the parties discussed with the Court and as the Court noted in its April 15, 20202 Order. Ms. von Dornum also has deep knowledge of the MDC, has toured the facility previously, and can assist Dr. Venters, especially given that he will not be permitted to speak with staff during the inspection.

VI. Hand Sanitizer

Respondent objects to allowing Petitioners' counsel and Dr. Venters to bring with them hand sanitizer for personal use during the tour because it contains alcohol. Counsel and Dr. Venters do not plan to bring in great quantities of hand sanitizer and they should be trusted as officers of the Court and a medical professional, respectively, not to distribute it to individuals within the MDC in contravention of the facility's rules. Respondent also notes that non-alcohol based hand sanitizer is available in certain locations. However, the CDC only recommends alcohol-based hand sanitizer as effective against the coronavirus. *See* https://www.cdc.gov/coronavirus/2019-ncov/hcp/hand-hygiene.html. *See also, Valentine v.*

EMERY CELLI BRINCKERHOFF & ABADY LLP
Page 4

*Collier*, 20-CV-1115 (S.D. Tx April 16, 2020) Order, ECF No. 40 (granting preliminary injunction requiring, inter alia, Texas prison to provide alcohol-based hand sanitizer)

                                                                                 Respectfully Submitted,
                                                                                                   /s
                                                                                Katherine Rosenfeld

cc:      All Counsel (via ECF)