The
Intercept_

May 19, 2020

(DELIVERED ELECTRONICALLY)

Honorable Roanne L Mann
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

Re: *Hassan Chunn et al. v. Warden Derek Edge,* 20 Civ. 1590

Dear Judge Mann:

    I represent First Look Media Works, Inc., publisher of *The Intercept* ("FLMW"), a non-profit online news organization that has been reporting about the above-referenced proceedings. I write today to respectfully request that the Court permit FLMW to intervene for the limited purpose of opposing the continued sealing of information derived from Sick-Call Documents filed within exhibits in connection with the Petitioners Preliminary Injunction Motion before this Court.[1]

    Petitioners for the putative class have informed FLMW that there are nearly 200 documents filed with this Court under seal that mention information contained in Sick-Call Documents produced by the government in discovery. Paragraph 7 of a Protective Order approved on April 15, 2020 contemplates that this Court will make a determination whether this material should remain "under seal." FLMW, as a surrogate for the public, has standing and the right to intervene to protect the First Amendment and common law rights of access to the sealed portion of these records. *See Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 126-27 (2d Cir. 2006) (acknowledging that newspapers have right to intervene for access to sealed documents); *United States v. Aref*, 533 F.3d 72 (2d

---

[1] Because FLMW is requesting an unsealing order, pursuant to Rule III (G) of Judge Kovner's Individual Practice Rules this letter application is being submitted to Your Honor as the Magistrate Judge assigned to this action.

**The Intercept_**

Cir. 2008) (a motion to intervene is the proper procedural mechanism for the press and the public to challenge sealing orders in criminal cases).

This is especially important here because neither Party has provided this Court "with specific, on-the-record findings that sealing or redaction is necessary to preserve higher values" and is "narrowly tailored to achieve that aim." *Lugosch*, 435 F.3d at 124. In April 24, 2020 correspondence with the Petitioner, attached hereto as Exhibit A, the United States Attorney for the Eastern District of New York offered a single reason for continued closure. The Attorney General's Office maintained that even though many of these records exclude names of incarcerated persons and their register numbers, fellow incarcerated persons or unspecified members of the public may be "able to identify the inmate based on the complaints raised in the sick call request."

This type of unsupported, speculative and generalized assertion does not remotely overcome the public's constitutional and common law access right to court filings.

FLMW does not contested that the privacy interests of third parties, particularly the incarcerated people at risk in this case, should be considered by this Court before determining closure. *Application of Newsday, Inc.,* 895 F2d 74, 79 (2d Cir. 1990). Indeed, this Court must balance the right of public access against privacy interests, considering "the sensitivity of the information and the subject," "the reliability of the information," and whether "there is a fair opportunity for the subject to respond to any accusations contained therein." *U.S. v. Amodeo*, 71 F.3d 1044, 1051 (2d Cir. 1995). But the Court must also balance those interests against the public interests in examining how the government performs its obligations. That is particularly true here when the people affected are medically defenseless.

*The Intercept* does not seek access to unrelated records about "itches" or other complaints. *The Intercept* seeks only those records that reflect an inmate reporting at least one Covid-19 symptom. Furthermore, *The Intercept* does not seek identifying information – the name and register number of the prisoner having already been redacted.

This Court should entertain three observations. First, Petitioners' counsel, who are engaged to protect the rights of the incarcerated persons before the Court, do not think their clients' privacy interest are affected by the release of the unredacted records. It appears pretextual for the government to profess privacy

concerns when those who represent the incarcerated individuals do not. Second, the government has not presented any facts that would demonstrate the specific harm to particular individuals required to justify the closure. Instead it relies on over-broad assumptions that have never been sufficient to overcome the presumption of access. *Globe Newspaper Co. v. Superior Court for Norfolk County*, 457 U.S. 596, 606 (1982). Third, it has been recognized that "[p]rivacy interests should be trumped when evoked to protect public officials from criticism." *United States v. Huntley*, 943 F. Supp. 2d 383, 387 (E.D.N.Y. 2013) (citing *Garrison v. State of Louisiana*, 379 U.S. 64, 73 n.9 (1964) ("Even the law of privacy . . . recognizes severe limitations where public figures or newsworthy facts are concerned").

For the reasons above, FLMW respectfully asks that this Court permit its intervention and permit the public access to the redacted records filed with this Court.

Very truly yours,

/s/

David Bralow
Senior Vice President, Law
First Look Media Works, Inc.
david.bralow@firstlook.org
646-784-3287