

U.S. Department of Justice

*United States Attorney*
*Eastern District of New York*

*271 Cadman Plaza East*
*Brooklyn, New York 11201*

May 20, 2020

**By ECF**
Honorable Rachel P. Kovner
United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

  Re: *Chunn, et al. v. Warden Derek Edge*,
     Civil Action No. 20-cv-1590 (Kovner, J.) (Mann, M.J.)

Dear Judge Kovner:

  Pursuant to the Court's May 19 Order to Show Cause, Respondent responds to Petitioners' and Intervenor's request to have Exhibit 88, consisting of a subset of redacted sick call requests by inmates complaining of possible COVID-19 symptoms, filed on the public docket.

  While there are hundreds of pages of documents on the public record that express the parties' contentions regarding conditions at MDC during the COVID-19 pandemic, Petitioners and the Intervenor seek to make public a class of documents that were created not to chronicle medical issues at MDC for public consumption, but instead designed for individuals to seek medical attention. Although, as discussed below, the "[s]tatistics, numerical summaries, compilations of data, and other summary data gathered" from these sick call documents can be made publicly available, Petitioners and the Intervenor seek to publish the requests themselves when likely many of the individuals who wrote these requests seeking medical attention had no reason to believe their specific, confidential, medical complaints would be filed on a public docket.

  For the reasons set forth below, the Court should deny Petitioners' and Intervenor's request to publicly file these individual requests for medical attention when Petitioners are already able to present on the public record the information gathered from these documents.

I. **Factual and Procedural Background**

  In Petitioners' proposed discovery schedule dated April 10, 2020, Petitioners sought three "documents" which then included "[a]ll sick call requests for medical care made by people incarcerated at MDC from March 13, 2020, in redacted form to omit the person's name and DIN number." ECF No. 37-1 at p. 12 of 15. In response to Petitioners' document request, Respondent produced approximately 1000 pages of sick call requests, and an Activities Report showing the Metropolitan Detention Center's ("MDC") response to sick call requests.

On April 15, 2020, the parties entered into a Stipulation and Order for the Protection of Sick Call Documents ("Protective Order"), which the Court so-ordered on the same date.[1] *See* Dkt. No. 46-1. As set forth in the Protective Order, Respondent contends that the confidential materials in the Sick Call Documents ("Confidential Material") concerned privileged, sensitive, or confidential matters that are protected from disclosure by law. *See* Dkt. No. 46-1. As set forth in the parties' agreed-upon Protective Order, strict restrictions are established regarding the discovery of this Confidential Material. These sick call records are confidential – they are submitted by inmates to request medical care. Most, if not all, inmates who submit these records are not doing so to create a public record of their complaints, and some may not want their complaints publicly known.

The parties negotiated a Protective Order that strikes the right balance between the relevant information in the requests and the requestor's right to privacy. The key provision of the Protective Order is paragraph 7, which provides that the parties should request to file the documents themselves under seal. Dkt. No. 46-1. On the other hand, the Protective Order also provides that "[s]tatistics, numerical summaries, compilations of data, and other summary data gathered from the Sick-Call Documents is excluded from the restrictions of this Protective Order[.]" *See* Dkt. No. 46-1 at ¶ 2.

At the evidentiary hearing, Petitioners sought to introduce Exhibit 88, which contains 210 pages of sick call requests in which Petitioners allege MDC inmates express at least one symptom consistent with COVID-19. The inmates' names and register numbers are redacted, but in some cases their housing area is identifiable. Also, there are other aspects of these requests – e.g., the handwriting, the symptoms described, the use of another language – that could potentially reveal the identity of the inmate to members of the public and other inmates.[2]

On May 18, Petitioners filed a letter request seeking, *inter alia*, permission to file Exhibit 88 on the public docket with the other admitted exhibits. *See* Dkt. No. 96. On May 19, Intervenor First Look Media Works filed a motion that appears to seek the same relief regarding Exhibit 88. *See* Dkt. No. 98.

## II. The Arguments For Unsealing the Sick Call Requests are Without Merit

The Court should allow the individual sick call requests to retain the confidentiality afforded by the Protective Order. The Protective Order was necessary because the documents in

---

[1] The Court, however, clarified the Protective Order as follows: (1) Paragraph 6: The Court and court personnel are not required by this paragraph to sign Exhibit A; and (2) Paragraph 9: This paragraph does not apply to the Court's copies of Confidential Material. *See* Order, dated April 15, 2020.

[2] The Intervenor's assertion that Respondent must "demonstrate the specific harm to particular individuals" (Dkt. No. 98 at 3) is not supported by any legal authority cited by the Intervenor. Moreover, the Intervenor's statement that "Petitioners' counsel, who are engaged to protect the rights of the incarcerated persons before the Court, do not think their clients' privacy interest are affected by the release of the unredacted records" is without basis in the record as it is not clear from the Petitioners' submissions that members of the putative class were consulted in connection with efforts to publicly disclose their sick-call requests in unredacted form. To demonstrate, Petitioners submit approximately 30 non-party inmate declarations in support of their preliminary injunction motion and in none of those declarations do the declarants advocate for the release of their sick-call requests in unredacted form.

question are protected by the Privacy Act, 5 U.S.C. § 552a. The Privacy Act provides a limited waiver of sovereign immunity for: 1) "actual damages" sustained as a result of a violation of the Act; and 2) injunctive relief in limited circumstances as prescribed under the Act. *Tarullo v. Defense Contract Audit Agency*, 600 F. Supp. 2d 352, 359 (D. Conn. 2009) (citations omitted). Arguments that the redaction of inmates' names and register numbers somehow obviates privacy concerns or strips these documents of their privacy protections are wholly without merit. The documents were created with an expectation of privacy, and there remains a risk that in looking at the individual requests, private information related to the requestor could be exposed.

The Court must strike a balance between this privacy interest and the public interest in this information. *See Mirliss v. Greer*, 952 F.3d 51 (2d Cir. 2020) (recognizing the presumptive right of public access to a "judicial document" that had been shown to the jury at trial but holding that, "in balancing the weight of the presumption of access, the [d]istrict [c]ourt failed to take sufficient account of two categories of countervailing considerations," including a non-party witness's privacy interests).

Respondent respectfully submits that the Protective Order strikes this balance – keeping the individual requests confidential while allowing Petitioners to discuss and present the information derived from the requests. The purpose of the Protective Order was to effect a partial waiver of the Privacy Act protections so that Petitioners could see the sick call requests and use information derived from them in the litigation. As to everyone else in the world, including the media, the documents are still protected by the Privacy Act, and BOP simply cannot release them without the consent of the inmates involved. The mere fact that the government has agreed to produce these materials to the Petitioners in response to their lawsuit, subject to the terms of the Protective Order, does not vitiate the Privacy Act protections that apply to the documents or allow anyone else in the world to have them. Further, the exact text of individual sick call requests is not as relevant to the issues in this case as the information and data derived from the sick call requests. As such, here the public interest in accessing individual sick call requests cannot overcome the privacy interests.

Furthermore, contrary to the broad proclamations in Intervenor's May 19, 2020 letter, the public does not have an unrestricted "constitutional and common law access right to court filings." Rather, as recently reiterated by the Second Circuit, "[T]he mere filing of a paper or document with the court is insufficient to render that paper a judicial document subject to the right of public access." *Trump v. Deutsche Bank AG*, 940 F.3d 146, 150 (2d Cir. 2019) (citation omitted). "In order to be designated a judicial document, the item filed must be relevant to the performance of the judicial function and useful in the judicial process." *Id.* at 151 (citations omitted) (holding that the redacted portion of a letter submitted to the district court, naming individuals other than Trump whose tax returns were in the bank's possession, was not a "judicial document" because it was not "relevant to any issue" that needed to be decided and "add[ed] nothing to the arguments of the parties" *id.* at 151-52). For example, documents submitted to a court for its consideration in a summary judgment motion are judicial documents to which a strong presumption of access attaches because they will usually be relevant to the court in determining whether the standards of Fed. R. Civ. P. 56(a) have been met. *See Trump*, 940 F.3d at 151. However, a sick-call request— wholly divorced from how the MDC responded to that request— mentioning a single COVID-19 symptom, is probative of nothing in this case, and certainly not evidence of an Eighth Amendment violation warranting injunctive relief. The Petitioners have presented arguments to the Court based

3

on conclusions they draw from sick-call requests in the aggregate, and those summaries and analyses were contemplated by the Protective Order and are presented in full public view.

For these reasons, Respondent respectfully requests that the Court deny the request to unseal the individual sick call requests.

Respondent thanks the Court for its consideration of this request.

Respectfully submitted,

RICHARD P. DONOGHUE
United States Attorney

By: /s/
James R. Cho
Seth D. Eichenholtz
Joseph A. Marutollo
Paulina Stamatelos
Assistant U.S. Attorneys
(718) 254-6519/7036/6288/6198
james.cho@usdoj.gov
seth.eichenholtz@usdoj.gov
joseph.marutollo@usdoj.gov
pauline.stamatelos@usdoj.gov

cc: The Honorable Roanne L. Mann (By ECF)
All Counsel of Record (By ECF)