1

```
 1                UNITED STATES DISTRICT COURT
                  EASTERN DISTRICT OF NEW YORK
 2    - - - - - - - - - - - - - - - X
                                    :
 3      HASSAN CHUNN, ET AL.,       :  20-CV-1590(RPK)
                                    :
 4           Petitioners,           :
                                    :
 5                                  :  United States Courthouse
                                    :  Brooklyn, New York
 6       -against-                  :
                                    :
 7                                  :  May 2, 2020
        WARDEN DEREK EDGE, ET AL.,  :  10:00 a.m.
 8                                  :
             Respondents.           :
 9    - - - - - - - - - - - - - - - X

10        TRANSCRIPT OF CIVIL CAUSE FOR TELEPHONE CONFERENCE

11          BEFORE THE HONORABLE RACHEL P. KOVNER
                  UNITED STATES DISTRICT JUDGE
12

13
                      A P P E A R A N C E S :
14

15    For the Petitioners:    EMERY CELLI BRINCKERHOFF ABADY LLP
                              600 Fifth Avenue - 10th Floor
16                            10th Floor
                              New York, New York 10020
17
                              BY:  KATHERINE R. ROSENFELD, ESQ.
18                                 O. ANDREW F. WILSON, ESQ.
                                   SCOUT KATOVICH, ESQ.
19

20                            BENJAMIN N CARDOZO
                              SCHOOL OF LAW
21                            55 Park Avenue, Room 938
                              New York, New York 10003
22
                              BY:  ALEXANDER REINERT, ESQ.
23                                 BETSY R. GINSBERG, ESQ.

24

25
```

2

1                    A P P E A R A N C E S: (Continued.)

2
   For the Respondents:        RICHARD P. DONOGHUE, ESQ.
3                              UNITED STATES ATTORNEY
                               EASTERN DISTRICT OF NEW YORK
4                              271 Cadman Plaza East
                               Brooklyn, New York 11201
5
                               BY:  JAMES R. CHO, ESQ.
6                                   SETH EICHENHOLTZ, ESQ.
                                    JOSEPH MARUTOLLO, ESQ.
7                                   Assistant United States Attorneys

8
                               DEPARTMENT OF JUSTICE - USAO
9                              271A Cadman Plaza East
                               Brooklyn, New York 11201
10
                               BY:  PAULINA STAMATELOS, ESQ.
11

12   ALSO PRESENT:

13   Holly Pratesi, Esq., Federal Bureau of Prisons
     Wadid Habib, US Attorney's Office, IT
14

15
     Court Reporter:           DENISE PARISI, RPR, CRR
16                             Official Court Reporter
                               Telephone: (718) 613-2605
17                             E-mail:  DeniseParisi72@gmail.com

18   Proceedings recorded by computerized stenography.  Transcript
     produced by Computer-aided Transcription.
19

20                    *     *     *     *     *

21

22

23

24

25

*Proceedings*                                                                    3

1          (All present via teleconference.)

2          THE COURT:  Hi, everybody.

3          So this is a conference call in Chunn vs. Edge.

4    It's 20-CV-1590.

5          Could the parties state their appearances?

6          MS. ROSENFELD:  Good morning, Your Honor.

7          This is Katie Rosenfeld and Andrew Wilson from Emery

8    Celli for petitioners, and Scout Katovich.  And also on the

9    phone is Betsy Ginsberg and Alex Reinert, also for

10   petitioners.

11         MR. CHO:  Hi.  Good morning, Your Honor.

12         James Cho with the U.S. Attorney's Office.  I'm

13   joined by my colleagues Seth Eichenholtz, Deputy Chief, Civil

14   Division; Joseph Marutollo, Deputy Chief, Civil Division;

15   Paula Stamatelos, AUSA, Civil Division; and Holly Pratesi,

16   P-R-A-T-E-S-I, with the Bureau of Prisons, and we will be

17   joined momentarily by Wadid Habib, who is with our IT office

18   at the U.S. Attorney's Office.

19         JUDGE MANN:  And Judge Mann is also on the line.

20         THE COURT:  Great.

21         We have a court reporter also, so if you wouldn't

22   mind, just per usual, identifying yourself before you speak,

23   that will make things easier.

24         Thanks everybody for jumping on a call on a

25   Saturday.  I appreciate it.

1        When we scheduled this, I was hoping to talk about

2   logistics and time related to the preliminary injunction

3   hearing.  I think we have one other issue that's come up in

4   the interim, which is that respondent filed a motion to strike

5   Dr. Venters' report or any alternative to reopen his

6   deposition, quite simply, on the basis that inclusion of the

7   report was in contravention of Judge Mann's prior ruling, and

8   then there was a response filed to that, so I thought it might

9   make sense to address that matter first, and I was inclined to

10  ask Judge Mann to handle it, so maybe we can do that first,

11  and then I will turn over the floor and then we can talk about

12  scheduling and logistics.

13       JUDGE MANN:  Okay.  This is Judge Mann.

14       Thank you, Judge Kovner.

15       Let me address counsel for the Government.

16       In opposition to your motion to strike on the

17  alternative to reopen Dr. Venters' deposition, petitioners

18  state -- and I quote from page 1 of their response in

19  opposition -- respondents' new complaint is that they received

20  more discovery than this Court found they were entitled to at

21  this stage of the proceedings.

22       My question to respondents is:  How do you answer

23  that charge?

24       MR. CHO:  Your Honor, this discovery proceeding

25  always contemplated -- and the way we had proceeded initially

1   was that we would get the report and then take his deposition

2   based on information contained in his report.  That was the

3   schedule that was set forth in our initial discovery sent to

4   Your Honor.

5          After we noticed his deposition, petitioners moved

6   to quash on the grounds that it would be too burdensome to

7   have a deposition and prepare for it and, at the same time,

8   prepare a report.  So we were on a call with Your Honor this

9   time last week addressing that very issue where they

10  represented to the Court that it was overly burdensome to do

11  so, so the Court gave us an option:  either get a report or

12  take his deposition, but not both.  So we opted to take his

13  deposition because that was the option that was available to

14  us because we wanted to query this expert as to his knowledge

15  and his opinions.

16         So we took his deposition by the deadline imposed by

17  the Court on Thursday, and we were limited to only four and a

18  half hours, we abided by that time limitation, and he came

19  woefully unprepared for his deposition.  We had asked for his

20  notes in advance, which were not produced, and we asked

21  specific questions about inmates, which he could not identify

22  a single inmate, other than one inmate whose records he

23  reviewed, and most of his report was produced less than 12

24  hours later after deposition, identified these inmates by name

25  and allegations about -- for these specific inmates, which he

1   wasn't prepared to do at his deposition, and most of his

2   opinions flow from those inmate allegations, and we were not

3   given the opportunity to query him on those allegations.  And

4   it's our position that if we knew he was going to prepare a

5   report, then we would have taken his deposition after the

6   report.  That was the whole point of why we had asked for the

7   report first and then noticed his deposition for after the

8   report was prepared.

9            JUDGE MANN:  If I might just stop you at that point

10  and then you may proceed.

11           The Court ruled, given the expedited schedule and

12  the fact that we're talking about discovery needed to prepare

13  for the preliminary injunction hearing, this isn't full merits

14  discovery, the Court concluded that requiring both the

15  preparation of a complete report and requiring that the

16  witness be produced for deposition would be disproportionate

17  to the needs of the case at this stage in the litigation.  You

18  now said that had you known that he was going to be preparing

19  a report, you would have deferred the deposition until after

20  you received the report, but isn't it true that the Court did

21  not give you that option?  You would have been able to

22  cross-examine him at the hearing about his report, and you

23  still have that opportunity available, I presume, but you say

24  you would have waited and taken his deposition after, but that

25  was not an option that the Court gave you; correct?

1         MR. CHO:  Understood, Your Honor.  That is correct.

2         But, again, the reason why this issue came up is

3    because petitioners had indicated that they could not -- the

4    petitioners had indicated that they could not do both, and it

5    was obviously our preference to get a report first and then

6    take a deposition after we got the report.  They said they

7    couldn't do both, but they did.  And so we think it's

8    disingenuous for them to say they couldn't less than a week

9    ago and then actually do it.  So the purpose of getting a

10   report first is so we can take an efficient deposition so we

11   can query the expert on all the opinions that he's going to

12   express in this case.  So I don't know -- for whatever

13   strategic reason, they decided not to send the report before

14   the deposition at which time we could have queried him on all

15   the opinions and facts that he relied upon at a deposition,

16   so --

17        JUDGE MANN:  You have -- go ahead.

18        MR. CHO:  So, I understand, yes, the Court said it

19   can either be a deposition or an expert report, but for them

20   to now produce a report after they said they did -- it was too

21   burdensome for them to do both, to me, it strikes me as a

22   misrepresentation to the Court as to what they were able to do

23   and not able to do.

24        JUDGE MANN:  Well, I note that because of the

25   compressed time schedule, this Court gave the respondent until

1  April 28th to elect whether or not to obtain a report versus

2  take a deposition of Dr. Venters, and according to the revised

3  schedule set by the District Court, the petitioners' brief in

4  support of a preliminary injunction, including any

5  supplemental expert report, was due April 30th, which turns

6  out to be the date that Dr. Venters was deposed.

7            Now, in retrospect, wouldn't you have assumed that

8  the petitioners and Dr. Venters would have had to start

9  preparing a report in advance of the respondents electing

10  whether or not to depose him or to insist on a report?

11            MR. CHO:  Again, this is James from the Government.

12            I don't know what they did or didn't do, but they

13  had represented to Your Honor at this time last week that it

14  was overly burdensome to do both, right, and that's why the

15  Court gave us a choice because the Court did not want to

16  impose both obligations on the other side to pick one or the

17  other, and so -- and when I took his deposition on Thursday, I

18  asked him, had he prepared a report.  He said not yet.  So he

19  hadn't.  So I don't know whether a report was prepared after

20  the deposition or it had been started before, I don't know,

21  but that was his testimony.

22            JUDGE MANN:  You say that the prejudice that you've

23  suffered, because you've got more than you are entitled to

24  under the Court's order, is that Dr. Venters at the deposition

25  couldn't recall the names of inmates.  Is there any other

*Proceedings*                                                           9

```
 1   prejudice that you claim that you suffered as a result of the
 2   service of the report after the deposition?
 3            MR. CHO:  Again, this is James from the Government.
 4            Most of Dr. Venters' opinions flow from the
 5   allegations made by these inmates that he talked to.  At his
 6   deposition, I asked him for specifics as to what inmates said
 7   what, and he did not have that information at all, so I could
 8   not query as to specific inmate comments, what they said to
 9   him, the under opinions behind those allegations, and any
10   responses from him to those allegations; so he cannot have
11   that knowledge at all at his deposition and then 12 hours
12   later he can identify, with specificity, with the names of the
13   inmates, what each of the inmates were saying to him.  Again,
14   we haven't had a chance to probe his knowledge with respect to
15   those allegations.
16            JUDGE MANN:  And if you had opted for the report in
17   lieu of the deposition, you would then be able to question him
18   at the preliminary injunction hearing, correct?
19            MR. CHO:  That's correct, Your Honor.
20            JUDGE MANN:  So, again, how are you prejudiced by
21   the fact that that more detailed information was provided in a
22   report that was served on you after his deposition?
23            MR. CHO:  Because Your Honor's order compensated
24   information -- either one or the other -- and, I assume,
25   complete information; and at his deposition, he came in with
```

*Proceedings* 10

1    incomplete information and could not provide information

2    regarding these inmate alleges, but after deposition, he's

3    able to.

4         So, again, the deposition was in lieu of a report,

5    and we anticipated he would come into the deposition fully

6    prepared to answer all of these questions, and for him to now

7    say, well, at the time of the deposition I didn't know, but

8    less than half a day later he now has a recollection of all of

9    these comments made by these inmates.  It just seems extremely

10   prejudicial because the purpose of the deposition was for him

11   to articulate his complete opinions, not to tell them after

12   the deposition.

13        JUDGE MANN:  Mr. Cho, I note that you did not attach

14   any of the draft deposition transcript to the letter motion to

15   the Court, so if this witness was so unprepared for his

16   deposition, why haven't you attached portions of his

17   deposition testimony to support your claim now that he really

18   was unprepared to answer the respondents' questions?

19        MR. CHO:  Well, I don't think there's any dispute at

20   all -- and Ms. Rosenfeld was at the deposition as well -- that

21   when I asked him about specific inmates, he didn't have any of

22   that information.  He couldn't identify any inmate by name; he

23   couldn't identify what inmates said to him specifically.  So,

24   again, we did not -- you're right, we did not attach the

25   transcript to our letter because it's clear just from the

*Proceedings* 11

1    timing that -- it's our position that they contravened Your

2    Honor's order.  The purpose of the deposition was in lieu of a

3    report, and we would anticipate that the report would be

4    complete, so at the same time we would anticipate that his

5    testimony at the deposition would be complete as well, which

6    was not.

7          JUDGE MANN:  It's one thing to say that Dr. Venters

8    couldn't remember any names and it's another thing to say that

9    he was unprepared at the deposition.  So what you're saying is

10   that he couldn't remember specific names of inmates; is that

11   right?

12         MR. CHO:  That's correct.

13         JUDGE MANN:  Is there anything further that you want

14   to bring to the Court's attention?

15         MR. CHO:  Now, we understand -- look, our request is

16   very limited, just on the new information contained in this

17   report, which we did not have before, and it would be very

18   time limited to an hour or two, but just on the information

19   that was in his report that he didn't articulate at his prior

20   deposition.

21         JUDGE MANN:  Do petitioners want to respond?

22         MR. REINERT:  Your Honor, this is Alex Reinert for

23   petitioners.  I just want to say a few things.

24         I think the Court has hit on the most important

25   themes here, and I think the fact that it's so hard for

1   respondent to articulate any prejudice is telling.

2         I do want to respond to the, I think, direct

3   allegation that in some way we either mislead the Court or

4   respondent.  We said that the deposition and actual report was

5   unnecessary.  We also said it was burdensome.  We never said

6   we couldn't do both.  And it was extremely burdensome, as we

7   said in our letter, and so there was nothing strategic going

8   on.  We were working, as I'm sure the Court can appreciate

9   given the volume of the submission that we provided on

10  Thursday, and given the time frame, and given the challenges

11  in obtaining facts relating to the MDC, all of that, I can

12  assure the Court that we were working at all hours throughout

13  the week, and so I just -- I want to respond directly to that

14  because we have many attorneys on this line who had an

15  obligation to the Court for many years, and so to suggest that

16  we somehow mislead, I want to respond directly to that.

17        And then I just -- it's true, respondent did not

18  attach the portion of that deposition transcript to their

19  letter, didn't even actually provide an accurate quotation and

20  the complete quotation to the response to Mr. Cho's question,

21  which was "not yet," and then Dr. Venters said, "I've been

22  writing things down.  I still have more information to

23  review."  And there was no follow up, we could not find any

24  other reference in the deposition to the report, and so the

25  claim that now all of a sudden it's necessary to ask these

*Proceedings*                                                          13

1   questions, that, you know -- it would have been natural

2   follow-up questions to ask for the report, but, in any event,

3   Dr. Venters accurately answered the question and he was

4   deposed for four and a half hours.  We never -- we never said

5   we couldn't do both.  We just said it was unduly burdensome

6   and unnecessary, and now respondent has both his -- both

7   Dr. Venters' report and the deposition, and, as the Court

8   pointed out, had respondent only chosen to ask for a report,

9   they would be in a worse position than they are today.

10         And I think Ms. Rosenthal may have something to say

11  about the deposition.

12         MS. ROSENFELD:  Your Honor, this is Katie Rosenfeld.

13         The only thing I would add is that this is obviously

14  a very fast-moving proceeding, and Dr. Venters, I think, was

15  extremely prepared.  There were documents that he hadn't had a

16  chance to read yet fully, such as the deposition transcript of

17  the deposition that occurred on Monday, right, and -- or -- I

18  guess it was Monday -- so he provided a lot of detail.

19  Mr. Cho spent a lot of time asking him the number -- number of

20  people who reported this, he was quite specific where he could

21  be, they now have his report with those people's names in it.

22  The transcript will speak for itself, but I think that Mr. Cho

23  was able to get a very full understanding of Dr. Venters'

24  opinions.  We had provided the disclosure that Your Honor

25  directed in advance of the deposition which laid out the three

*Proceedings*                                                         14

1   areas of his opinion on their deficiencies.  Mr. Cho has that.

2          They've gotten a lot of bites at the apple of

3   understanding Dr. Venters' opinion, and he's a busy person,

4   and I would be -- I don't think it's appropriate to ask him to

5   be re-deposed in advance of the preliminary injunction hearing

6   when Mr. Cho will have a full opportunity to ask any more

7   questions.

8          JUDGE MANN:  All right.  If there's nothing further,

9   I'm prepared to rule on the motion.

10          The respondents' argument is that the submission and

11   service of an expert report following the deposition violated

12   this Court's April 25th ruling.  This Court disagrees with

13   that.  My ruling set a minimum requirement that the

14   petitioners had to comply with.  It does not say that they

15   could not prepare and serve an expert report; and in their

16   letter in opposition, petitioners do state that they submitted

17   an expert report in support of their motion for preliminary

18   injunction because without a deposition transcript, it was the

19   only way to use Dr. Venters' opinions in support of the relief

20   sought by petitioners.  The Court accepts that explanation,

21   finds nothing disingenuous in the way the petitioners have

22   conducted themselves; therefore, respondents' motion is

23   denied.

24          THE COURT:  Okay.  So maybe we can turn to the

25   preliminary injunction hearing.

*Proceedings*                                                                15

1          I know the parties have put in a joint proposed

2    schedule for witness lists and exhibit lists and motions in

3    limine, but this is obviously going to be a little bit

4    logistically complicated, so I thought it would make sense for

5    us to have this call to at least talk through what you all are

6    anticipating for the hearing.

7          I guess one issue at the outset is the logistics in

8    terms of how we're going to do this.  My sense is that doing

9    this in person at the courthouse is not a first choice option

10   because of all the COVID-related issues, so I've been

11   anticipating that whatever testimony we would do, we would do

12   by phone, but I wanted to give the parties an opportunity to

13   speak to that.

14          MS. ROSENFELD:  Your Honor, this is Katie Rosenfeld.

15          I think we had also anticipated that the hearing

16   would be remote for the reasons that Your Honor just

17   described.

18          MR. CHO:  Your Honor, this is James for the

19   Government.

20          Yeah, we also anticipate this being done remotely as

21   well, either by telephone or even perhaps by video.  I know

22   there's some protocols that are going into place in the near

23   future to provide for video proceedings with the Court, but I

24   do think remote makes sense in this case as well at this

25   juncture.

1          THE COURT:  Okay.  Well, I'll look into it a little

2     bit, this video option, but it may make sense for you all to

3     look into it and discuss that as well.  I think the video

4     options with respect to folks who are at the MDC may be

5     truly -- at this point, I'm not sure we have them working, so

6     I'm not really sure that's going to be up and running for

7     folks who are at the MDC, if that's what you are anticipating,

8     but perhaps it will be easier for others.  But I guess maybe

9     you all can look at and discuss whether you have a video

10    option you want to proposes in lieu of doing it by telephone.

11         MR. CHO:  Understood, Your Honor.  Again this is

12    James for the Government.

13         I suspect if the petitioners participate from the

14    MDC, that would be by telephone, at this point, but for the

15    other parties, I think video could be an option -- that's how

16    we've done the depositions -- and there's a call-in number

17    associated with those videos as well, but certainly telephone

18    or video -- telephone definitely works.

19         THE COURT:  What platform have you been using to do

20    video depositions?

21         MR. CHO:  DOJ uses Cisco Webex, so we've used those

22    for all the depositions to date.

23         THE COURT:  Okay.

24         MR. EICHENHOLTZ:  Your Honor, this is Seth

25    Eichenholtz.

1          I have been doing some work on this.  In my capacity

2     as counsel in the -- in the Federal Defenders, there's a BOP

3     case about legal access, and I know that Mr. Palmer is working

4     on a Cisco Webex court appearance platform for the court

5     that's had a number of hiccups, but, I believe maybe by next

6     week, will be in place.  I do know that there will be testing

7     that will be going on to see if that Webex platform would work

8     with the BOP video conference equipment, and I'm cautiously

9     optimistic it may.  I think it's best to assume that the

10    petitioners would need to appear by phone, but there is a

11    possibility out there that by the 12th we would be able to

12    have a Cisco Webex platform that would interact with the BOP

13    equipment.

14          THE COURT:  Got it.

15          So the petitioners included with the preliminary

16    injunction filing a number of declarations and also the report

17    of Dr. Venters'.  I'm wondering if the petitioners have given

18    any thought to whether these filings would suffice as direct

19    testimony for any of those individuals.  I guess I will leave

20    it at that.

21          MS. ROSENFELD:  Your Honor, yes, we have, at least

22    with respect to the named petitioners, considered that and

23    agreed with the Government that the petitioners -- named

24    petitioners' declarations would suffice for their direct

25    testimony.

1          With respect to the non-petitioners' declarations,

2    our view is that the evidence is in the record and the Court

3    has it, and I don't think at this point we would anticipate

4    the need to present live testimony from every single person

5    who submitted a declaration, obviously.

6          THE COURT:  Yes.

7          Dr. Venters.  Are you anticipating that his report

8    would be his direct, or are you anticipating doing a direct in

9    addition to that?

10          MS. ROSENFELD:  Well, we certainly can see the value

11   in having some limited live testimony from Dr. Venters to the

12   extent that it would be helpful and assist the Court.  I think

13   we would obviously -- we would be interested to know if the

14   Court has any specific views on what would be helpful for it

15   to have in front of it live.  And, obviously, if the

16   respondent decides to cross-examine Dr. Venters at the

17   hearing, which I assume they will, then we would have the

18   opportunity to do a redirect of him.

19          THE COURT:  Right.  Right.  My first reaction is

20   that, for both sides, that since we are doing this --

21   particularly since we are doing this remotely, it may be --

22   I'm not sure there's a lot to be gained from doing a, kind of,

23   live direct as opposed to accomplishing that through written

24   submissions.  So I guess it seems like one way to streamline

25   the hearing may be to have direct done through paper

*Proceedings*                                                  19

1   submissions rather than through an in-person testimony,

2   particularly to the extent that the in-person testimony would

3   recapitulate what's in written submissions already.

4           MS. ROSENFELD:  Your Honor, I'm sorry, I misspoke.

5   My colleague just corrected me.

6           With respect to Mr. Hair, Petitioner Hair, we did

7   contemplate calling him for some live testimony before the

8   Court just made the comment that it made, and so that we had

9   discussed with the Government making Mr. Hair available for a

10  deposition.  Obviously, if it's the Court's preference that

11  all testimony be direct testimony on paper, we would abide by

12  that, but we have had a different conversation with the

13  Government about Mr. Hair.

14          THE COURT:  What would be the purpose of doing an

15  in-person direct?

16          MS. ROSENFELD:  Well, I think that it would be

17  potentially helpful for the Court to hear from people and have

18  the benefit of their, kind of, speaking to the Court about

19  their experience as opposed to, sort of, a prepared

20  declaration.  There might be some nuances, I think, that the

21  Court could gain from that.  We certainly don't expect to

22  present many people that way, it would probably be just one,

23  but that was our thought.

24          THE COURT:  Okay.  You all have probably thought

25  about this issue also, but if there is an intent to produce

*Proceedings*                                                        20

1   folks who are inmates at the MDC for testimony, that it -- at

2   least the schedule that I have been given has asked me to

3   identify any inmates for phone conferences the Tuesday of the

4   week before, I believe, so you all are obviously in direct

5   contact with the MDC.  And I don't know if the Government has

6   a different channel, but if it were my channel that we were

7   using, I think I would want to give those names to the MDC --

8   I think I have the right day, but I believe we were being

9   asked to do it the week before.

10              MS. ROSENFELD:  Absolutely, Your Honor.  We would

11  want to make arrangements so that it was very smooth.

12              One question -- a follow-up question to the issue of

13  the phone versus the video.

14              You know, I appreciate that Mr. Eichenholtz has been

15  working very closely with the MDC and the Federal Defenders on

16  their case, and that this sounds like the Cisco Webex access,

17  you know, possibly could be available from the MDC for video

18  testimony early next week.  Obviously, from our perspective,

19  video testimony is much preferable to phone, and to the extent

20  that our -- if there is going to be testimony from the

21  petitioners, it could be on video.  I think it would -- it

22  would be substantially better than phone, which I think has

23  been difficult even for just our legal calls.  So I just

24  wanted to reiterate that we would be very hopeful that video

25  could be arranged for next Tuesday and whatever we can do to

1   help, we could do.

2         JUDGE MANN:  This is Judge Mann.

3         May I make one observation, and that is that I don't

4   know whether the petitioners are contemplating having their

5   clients and any witnesses in the MDC available just for the

6   portion of the hearing in which that person's testimony is

7   desired.  It might cause logistical problems for the MDC to

8   have to produce all four of the petitioners who are currently

9   in custody at the same time if they're planning to

10  participate, or at least be in attendance for the entire

11  hearing, so I just raise that as a logistical issue.

12        MS. ROSENFELD:  Thank you, Judge Mann.  We

13  appreciate the logistical difficulties, and obviously it would

14  be our preference to have people attend hearings -- the entire

15  hearing, but I don't believe we were anticipating that would

16  be possible, so I think really the question is just making

17  sure they can give their testimony ideally by video for

18  whatever their own portion of the hearing is.

19        MR. EICHENHOLTZ:  Your Honor, this is Seth

20  Eichenholtz.

21        I certainly would be willing to work with

22  Ms. Rosenfeld, and I can see what we can do.  It's a

23  constantly evolving situation, but, as the Court alluded to,

24  having all four available for the entirety of the hearing

25  would require correction officers for each of those

*Proceedings* 22

1    individuals to sit, you know, by them the entire time, plus it

2    would use the resources that other inmates would use for their

3    legal calls and their court appearances for that day, so I

4    would -- I don't think that having them attend the entire time

5    is possible.  I would rather focus and work with Ms. Rosenfeld

6    on possibly getting them to be able to appear for a video to

7    the extent they are participating through testimony.  I think

8    that's something that we -- knock on wood -- hopefully can

9    make doable by the hearing.

10              THE COURT:  Okay.  Great.

11              So then it sounds like what I'm hearing, this is an

12   issue that you all may be able to talk about further in terms

13   of seeing if we can get video for anybody who is testifying at

14   the MDC.  I will just say on my end for the timing, I'm

15   available that day in general, so if you all work out with the

16   facility timing on appearances of folks, things that work for

17   you all and the facility in terms of individual witnesses, are

18   going to work for me.

19              So let me ask the Government, are you anticipating

20   also calling folks at the MDC, or is it really just likely

21   Mr. Hair on the petitioners' side who we are anticipating

22   would be a live witness from the MDC?

23              MR. CHO:  We have not made that decision yet.

24              This is James from the Government.

25              I think this is the first I'm hearing that they

*Proceedings*                                                        23

1   don't anticipate calling the other petitioners, but we haven't

2   made that decision yet on our end.  We will look over their

3   declarations again to see whether additional testimony is

4   required of them, but we -- as of right now, we haven't

5   decided.

6            THE COURT:  Okay.

7            I've looked back at the guidance that I've gotten,

8   and it is to please request teleconferences by Tuesday at

9   noon, the week before the scheduled conference.  So I guess I

10  would ask the parties to let me know Tuesday morning, I guess,

11  the names of witnesses who we might want from the MDC so that

12  I can pass that information along.

13           MR. CHO:  Understood, Your Honor.

14           THE COURT:  Okay.

15           So I think we talked about it, but I'm not sure we

16  resolved the issue.  Is the expectation that you would do a

17  direct of Dr. Venters or that you would use written testimony

18  for that?

19           MS. ROSENFELD:  Your Honor, I think we -- I want to

20  be as firm as possible today.  We obviously haven't seen their

21  expert report, there's some possibility that we might want

22  Mr. Venters to testify about their expert's report

23  affirmatively, so I guess it's difficult to say it today, as

24  much as we would like to firm everything up.  We can certainly

25  make that decision within 24 hours of receiving their expert's

*Proceedings*                                                    24

1   disclosures or whatever material they provide.

2           THE COURT:  Sure.  Okay.

3           So looking at the timeline that you all had proposed

4   for witness lists and exhibit lists, we are all operating on a

5   time frame and I don't want to disrupt unduly what you all

6   have agreed on.  My one concern is with the motion in limine

7   piece of it, which has motions in limine coming in on the 10th

8   and then options on the 11th and then a hearing on the 12th.

9           Do you have a sense of what you all are expecting

10  motion in limine practice about?  And I guess the other

11  question I'm going to ask is if we're set back -- pushed back

12  a day earlier -- it would just ensure that I have enough time

13  to do any legal research that those things require in advance

14  of the hearing.

15          MR. CHO:  Your Honor, this is James Cho for the

16  Government.

17          We are fine pushing the date up earlier.  A lot of

18  it depends on what they put on their exhibit list and witness

19  list, so that's why we built the schedule in this way, but we

20  are fine advancing the date as well.

21          MS. ROSENFELD:  Yeah, absolutely, Your Honor.  We --

22  advancing it by whatever makes sense for the Court to have

23  time is certainly fine.

24          THE COURT:  Okay.  I think if we just shift it back

25  a day so that we are talking about motions on the 9th and

*Proceedings*                                                                25

1    oppositions on the 10th, I think that will give me enough time

2    to make sure I've fully adjusted those in advance of the

3    hearing.

4            So I think that with respect to the Government's

5    motion to dismiss, the Government had indicated it intended to

6    file a reply early, in advance of, so that that motion would

7    be fully briefed in advance of the preliminary injunction

8    hearing, or maybe it had intended to file on the date of the

9    hearing, but I wanted to check in with Mr. Cho about that.

10           MR. CHO:  Well, under the current schedule, our

11   reply is due actually on the 15th after the hearing.  It was

12   our hope to have our reply filed in time for the hearing so

13   Your Honor can have the benefit of the briefing fully briefed

14   by the time of the hearing, so we will certainly still

15   endeavor, as we represented to the Court before, to have our

16   reply filed at the time, if not before, the hearing begins on

17   the 12th.  So that's our plan now, but given how this case is

18   moving and how fast it's going, we can't guarantee that, but I

19   think that's our sense of -- in the event Your Honor wants to

20   hear argument on the motion, that all the papers would be

21   before Your Honor at that time.

22           THE COURT:  Okay.  Right.  So that was why I was

23   raising that issue.  Obviously, it's not fully briefed at this

24   point, but if the briefing is all in on the 12th, it may just

25   make sense to have whatever argument we are going to have on

*Proceedings* 26

1    the motion on the 12th as well.

2          MR. REINERT:  Your Honor, this is Alexander Reinert

3    for petitioners.  I would just make one observation.

4          Our opposition is due on the 8th to that motion, so

5    I imagine, right, any reply is going to come in either the day

6    of the hearing or shortly before, and we don't think -- I

7    mean, if the Court wants to hear argument on it, obviously we

8    will argue it.  Given that we may not even be able to receive

9    a reply until the day of the hearing, I'm not quite sure that

10   that is fair to petitioners.

11         THE COURT:  Okay.  I don't want to put you in a

12   position where you are arguing something that you don't feel

13   like you've had an opportunity to consider.  I guess my only

14   thought is that I may need to think about whether I have

15   jurisdiction in advance of any preliminary injunction ruling,

16   so it may be that we'll need to -- to the extent that there is

17   argument, we will need to do it pretty quickly, I would think,

18   after the papers are in.

19         MR. REINERT:  Understood, Your Honor.

20         As we pointed out in our letter to the Court

21   regarding this earlier, if the respondents think there's a

22   jurisdictional problem, that's obviously something they can

23   raise in opposition to our motion for preliminary injunction,

24   and then I think it would be before the Court.

25         THE COURT:  Sure.  Okay.

*Proceedings*                                        27

1            So I think these are all the logistical matters that

2    I wanted to raise, so I think where we are is that you all

3    will let me know by Tuesday morning the names of any inmates

4    at the MDC who you are anticipating may be called and that way

5    I can provide that information through the channels we are

6    supposed to use for that.  And you all may be better situated

7    than I am to know how well the video option is going to work,

8    but I will certainly do what I can to facilitate that if it's

9    technically up and running, otherwise the schedule that you

10   come up with, I will just do a docket entry adopting what we

11   discussed which has the motions in limine schedule moved a

12   little bit earlier -- one day earlier.

13           Are there other --

14           MR. CHO:  Your Honor?  This is James for the

15   Government, Your Honor.

16           To the extent you are advancing the dates for the

17   motions in limine, I think it would make sense to advance the

18   dates for the exhibit list as well.  I'm sorry, I -- just to

19   make sure we get the exhibit list before the motions in limine

20   are filed, I think that's fine, as long as it's consistent

21   with that.

22           But in terms of the exhibits, does Your Honor want a

23   hardcopy of all potential exhibits, or electronic copies?

24   Would you like us to file it by ECF in advance?  What's your

25   preference?

*Proceedings*                                                    28

1      THE COURT:  I think electronic copies might be the

2  best way to handle this.

3      Are you all anticipating very voluminous exhibits?

4      MR. CHO:  Well, for the 30(b)(6) depositions,

5  petitioners had forwarded to us over 30 exhibits, so I assume

6  those might be paired down, but it's hard to say, but I think

7  electronic exhibits are easy and feasible to do.

8      THE COURT:  Okay.

9      Unless you all have any objection proceeding that

10 way, I prefer to do that than paper copies.

11     JUDGE MANN:  This is Judge Mann.

12     I would just note that if they're being filed

13 electronically as opposed to just being provided to the Court

14 electronically, there may be some medical records in there.

15 There might be issues about having them made part of the

16 public file, so I just raise that, and the potential need to

17 have at least some of the exhibits, if they're going to be

18 electronically filed in ECF, to be filed with restricted

19 access.

20     THE COURT:  Sure.  That's a good point.  And I can

21 imagine handling that by filing them as sealed documents on

22 ECF, if there's a basis for sealing them, which it sounds like

23 in that circumstance there would be, so I guess that would be

24 my suggestion.  If you wanted, we could also work out a way to

25 handle this electronically, I think, without filing everything

 1   on ECF, but it may just make sense to file anything that needs

 2   to be sealed as a sealed exhibit on ECF.

 3           MR. CHO:  Your Honor, what I have done in other

 4   cases is we have submitted exhibits directly to chambers

 5   through email, and then any exhibits that are actually used at

 6   the hearing or at trial are subsequently filed on ECF subject

 7   to those that need to be sealed, sealed, so as not to let ECF

 8   have a lot of unnecessary documents that may not be used

 9   throughout the proceedings.

10           MS. ROSENFELD:  I think that the only -- I think

11   we -- Judge Mann, of course, your point is well taken, we have

12   medical records and they can't be filed publicly, they need to

13   be filed under seal, but in terms of the docketing process, I

14   think it would make sense to have the exhibits to be used at

15   the hearing filed on the docket.  I think they should be

16   publicly available.

17           JUDGE MANN:  This is Judge Mann again.

18           There is the issue -- I believe Mr. Cho is

19   suggesting that if they're admitted, then they might be made

20   part of the public record, but he's suggesting that until they

21   are admitted they should simply be provided to chambers.  I

22   don't take any position on that, but I just note that he was

23   making that distinction between admitted exhibits and just

24   ones that parties may seek to introduce.

25           MS. ROSENFELD:  That's a good point, and perhaps we

*Proceedings*                                                    30

1   can just confer -- the parties should just confer and come up

2   with a joint, hopefully, agreement about the best way to

3   proceed and present that to the Court.

4              THE COURT:  Sure.  That sounds helpful.

5              Are there other issues relating to the hearing that

6   you all want to talk about today?

7              MR. CHO:  Your Honor, one more question, and this is

8   James, again, for the Government.

9              I know under your local rules or your courtroom

10  practices that for the exhibit list you don't require

11  identification of impeachment documents, and given that these

12  proceedings will be conducted remotely, to the extent there

13  are potential impeachment documents that may be used during

14  the proceedings, would Your Honor want them in advance, or

15  would you like those sent to chambers in the event that they

16  are being used at the time that they are being used?

17             THE COURT:  Yes, probably it would make sense to

18  send those in advance.  And certainly it seems like those are

19  documents that would make sense to just provide to the

20  chambers email account that way I'll have them and in the

21  event they are introduced, we can talk about them at that

22  point.

23             MR. CHO:  All right.  Thank you, Your Honor.

24             Nothing else for the Government.

25             THE COURT:  Anything else?

*Proceedings*                                                                31

1          MS. ROSENFELD:  No.  Thank you, Your Honor.

2          THE COURT:  Okay.  Thank you, everybody.  I

3    appreciate you taking your time on a Saturday.

4          MS. ROSENFELD:  Thank you.

5          MR. CHO:  Thank you.  Have a nice weekend.

6          MR. REINERT:  Thank you, Your Honor.

7          (Matter concluded.)

8

9                    *      *      *      *      *

10

11   I certify that the foregoing is a correct transcript from the
     record of proceedings in the above-entitled matter.

12

13     /s/ Denise Parisi                        May 2, 2020

14   _____        _____
       DENISE PARISI                            DATE

15

16

17

18

19

20

21

22

23

24

25